[No. 1735, July 13, 1915.]
[On Motion for Rehearing, December 1, 1915.]
STATE v. McKNIGHT.

SYLLABUS BY THE COURT.

1. When a party, on cross-examination of a witness, seeks to draw out new matter not inquired of on the examination in chief, he makes the witness his own for that purpose, and the opposite party may insist upon a cross-examination.

P. 24

2. It is a matter of discretion with the trial court whether or not to strike out on motion evidence which has been admitted without objection.    P. 28

3. Character is always to be presumed to be good until it is impeached, but, notwithstanding such presumption, it is relevant for the defendant to offer affirmative evidence of character, and to prove that it was such as to make it unlikely that he would have committed the act charged against him.    P. 31·

State v. McKnight, 21 N. M. 14.

4. Evidence of the general reputation of one accused of crime as to the particular traits involved in the issue is admissible in his favor.                                    P. 32

5. If the sole fact to be proved is that a letter or telegram was sent or received, the writing need not be produced.
P. 34

6. In homicide cases the clothing of the victim, when properly identified, may be produced as demonstrative evidence, on the theory that it is a part of the res gestae and tends to inform the jury of the character and nature of the wounds, the motive of the crime, the manner and means of death, the proximity of the defendant and the deceased when slain.                                                P. 35

7. In homicide cases, the introduction of clothing of the deceased in evidence has a tendency to rouse prejudice and passion, and unless the articles introduced serve the purpose of identifying the deceased or of honestly explaining the transaction, the introduction is irrelevant, and constitutes prejudicial error.                                        P. 36

8. It is well settled in this jurisdiction that a party, who intends to assign error upon an instruction given by the court of its own motion, or upon request of the adverse party, must either tender to the court an instruction which correctly states the law and except to the refusal to give such instruction, or he must, by his exception to the proposed instruction, call the attention of the trial court specifically to the error in the instruction proposed to be given, in order that the instruction may be corrected and the error avoided.
P. 38

9. The court cannot, in an instruction, substitute the requirements of the law that he shall instruct the jury as to what the law is, by any reference to an indictment from which the jury would have to determine what the essential elements of the crime charged are.                    ·        P. 41

State v. McKnight, 21 N. M. 14.

10. Where the only incriminating evidence before the jury is circumstantial, it is the duty of the court to instruct upon the rules of law regulating circumstantial evidence. But if there is any direct evidence tending to show the prisoner's guilt, or if a confession made by him has been proved, such an instruction is unnecessary.

P. 42

ON MOTION FOR RE-HEARING.                    )

11. Where a motion for a rehearing alleges that a certain question has been overlooked by the court, but as a matter of fact such question was expressly decided by the court, the motion on that point is not well taken.

P. 44

12. (a) In so far as section 4214, Code 1915, can be said to dispense with the requirement that counsel must specifically point out alleged error occurring during the progress of a cause, it is repealed by section 4506 of the Code of 1915.

(b) It is not the object of a motion for a new trial to call to the court's attention a matter not presented to it during the progress of the cause, except as to matters such as newly discovered evidence, misconduct of jurors, and the like.

P. 44

13. A new and original question cannot be presented on motion for rehearing filed in this court.            P. 48

(This case is pending in the Supreme Court of the United States on writ of error, as this report goes to press.— Reporter.)

Appeal from District Court, Chaves County; McClure, Judge.

Frank McKnight was convicted of voluntary manslaughter, and appeals. Affirmed, and rehearing denied.

C. O. THOMPSON, of Roswell, for appellant.
    As to hearsay evidence.

1 Greenleaf Ev., 16th Ed, 99; 1 Phillips Ev. (1st Am. Ed. Crown & Hill Notes), 169; Morrell v. Morrell, 60 N. E. 1092; Hopt v. People, 110 U. S. 574; 1 Starkie Ev. 229.

Cause should be reversed because of admission of irrelevant testimony.

Wilson v. State, 29 So. 569; Deal v. State, 34 So. 23; Smitherman v. State, 49 Ala. 355; Billings v. State, 52 Ark. 303; People v. Ching Hing Chang, 74 Cal. 398, 16 Pac. 201; People v. Dye, 75 Cal. 108-112, 16 Pac. 537; Vale v. People, 161 Ill. 309-311, 43 N. E. 1091; People v. Betts, 54 N. W. 487.

As to what is irrelevant, see:
Harper v. State, 83 Miss. 402-413-422, 35 So. 572; State v. Elvins, 101 Mo. 243-246, 13 S. W. 937; State v. Huff, 161 Mo. 459-495, 61 S. W. 900; State v. Moore, 129 S. C. 494, 55 L. R. A. 96; Falkner v. State, 23 Tex. Crim. Rep. 311-325; Hall v. United States, 150 U. S. 80; Leo v. State, 63 Neb. 723, 89 N. W. 303; State v. Fournier, 108 Minn. 402-403, 122 N. W. 329; People v. Wells, 100 Cal. 459, 34 Pac. 1078; Wharton's Crim. Ev., vol. 1, sec. 29a.

Answers to irrelevant matter on cross-examination are conclusive.

Wharton's Crim. Ev., sec. 484; Stokes v. People, 13 Am. Rep. 492; Schenley v. Com. 78 Am. Dev. 359; Langhorn v. Com., 76 Va. 1012; State v. Patterson, 38 Am. Dec. 699, et cetera ad infinitum.

A motion to strike does not come too late where incompetent evidence has been received under a mistake of fact.

People v. Pope, 108 Mich. 361, 66 N. W. 213; Baker v. People, 2 Neb. 157; People v. Colvin, (Cal.) 50 Pac. 539; Wallace v. State, (Fla.) 26 So. 713; Ortiz v. State, (Fla.) 11 So. 611.

Cross-examination can only relate to facts and circumstances connected with the matter stated in direct examination.

Rush v. French, 1 Ariz. 99, 26 Pac. 816; People v. Danby, 40 Pac. 1031; Tourtelotte v. Brown, 29 Pac. 130; State v. Smith, 49 Conn. 376; Hampton v. State, (Fla.) 39 So. 421; Adams v. State, (Fla.) 14 L. R. A. 253; Chandler v. Beal, (Ind.) 32 N. E. 597; Eacock v. State, (Ind.) 82 N. E. 1039; Anheuser B. Assn. v. Hutmacher, (Ill.) 21 N. E. 652; State v. Farrington, (Ia.) 57 N. W. 606; Seifert v. Schaible, (Kan.) 105 Pac. 529; State v. Taylor, (La. Ann.) 14 So. 26; Consolidated Gas, etc., Co. v. State, (Md.) 72 Atl. 651; Ross v. Minneapolis, etc., R. Co. (Minn.) 113 N. W. 573; Wills v. Russell, 100 U. S. 621; Aeolin v. Music Co., 176 Fed. 811; Young v. Welch Mfg. Co., 201 Fed. 563; Hales v. Mich., etc., R. Co., 200 Fed. 533; State v. McKinnon, (Ia.) 139 N. W. 523; Pettis v. State, (Tex. Cr. App.) 150 S. W. 790.

It was error to admit in evidence the clothing of deceased, for it simply inflamed the minds of the jurors.

Wharton's Crim. Ev., 13th ed., pp. 1813, 1814; Christian v. State, 46 Tex. Cr. Rep. 47, 79 S. W. 562; Cole v. State, 45 Tex. Cr. Rep. 225, 75 S. W. 527.

To admit evidence of bad character against the accused, it is necessary that he shall have already put his character clearly and expressly in issue.

Underhill Cr. Ev., 2d ed., p. 140; State v. Beckner, 194 Mo. 281, 5 L. R. A. (N. S.) 535; Bays v. State, 50 Tex. Cr. App. 548, 99 S. W. 561; Sweatt v. State, (Ala.) 47 So. 194.

It is error to instruct jury where there is no evidence to sustain instruction.

U. S. v. Breitling, 20 How. 252; Ward v. U. S., 14 Wall. 28; Chaffee v. Boston Belting Co., 22 How. 224.

If defendant had reasonable ground to apprehend danger, he had the right to act on appearances confronting him at the time, even though no actual danger existed.

State v. McKnight, 21 N. M. 14.

Carrol v. State, (Ala.) 58 Am. Dec. 282; State v. Harper, 149 Mo. 514, 51 S. W. 89; State v. Gorden, 191 Mo. 114, 109 Am. St. Rep. 790, 89 S. W. 1025.

It is error for court to assume facts in instructions.

Territory v. Kay, 21 Pac. 152; Swift and Co. v. Fue, 167 Ill. 443, 47 N. E. 761; Burney v. State, 6 So. 391; Nabons v. State, 2 So. 391; Snyder v. The State, 59 Ind. 105; Imphere v. State, 89 N. W. 128; Langdon v. People, 24 N. E. 874; N. J. L. Ins. Co. v. Baker, 94 U. S. 610.

As to effect of good character and duty to instruct thereon, see:

Wharton's Cr. Ev., 10th ed., note p. 950; People v. Elliott, 163 N. Y. 11, 57 N. E. 104; Cancemi v. People, 16 N. Y. 501; Stephen v. People, 4 Park Crim. Rep. 396; Com. v. Webster, 5 Cush. 295, 52 Am. Dec. 711; Remsen v. People, 43 N. Y. 9.

An ambiguous, obscure, unintelligible or uncertain instruction should not be given, nor should one be given which requires explanation.

12 Cyc., pp. 847-8, 24; Adams v. State, (Ala) 31 So. 851; People v. Bateman, (Cal.) 52 Pac. 112; Arbuckle v. State, (Miss.) 31 So. 437; State v. Pettit, 119 Mo. 410, 24 S. W. 1014; State v. Hellekson, (S. D.) 83 N. W. 254; Murmutt v. State, (Tex. Cr. App.) 67 S. W. 508.

An instruction to the effect that jurors are not at liberty to disbelieve as jurors if you believe as men, and that oath imposes no obligation to doubt where no doubt would exist if oath had not been given is erroneous.

Siberry v. State, 133 Ind. 677, 33 N. E. 681; State v. Ruby, 61 Ia. 86, 15 N. W. 848; People v. Johnson, 140 N. Y. 350, 35 N. E. 604, 9 Am. Cr. Rep. 377; State v. Taylor, 57 W. Va. 228, 50 S. E. 247; Robinson v. State, (Wyo.) 106 Pac. 24.

Court erred in referring jury to indictment to guide them in issues of case.

Bryan v. Chicago, etc., Ry. Co., 63 Ia. 464; Fitzgerald v. McCarty, 55 Ia. 702; Porter v. Knight, 63 Ia. 355.

IRA L. GRIMSHAW, Assistant Attorney General, for the State.

Leading questions are permissible, in discretion of trial court.

Territory v. Meredith, 14 N. M. 288, 292.

As to scope of re-examination of witness, see:

8 Enc. P. & P. 124-125; Bassham v. State, 38 Tex. 622, 625.

Test of collateral fact.

Wharton's Crim. Ev. (10th ed.) 1003; 2 Wigmore on Ev., sec. 1003.

The doctrine of harmless error was recognized in this jurisdiction in 1859.

Leonardo v. Territory, 1 N. M. 291; Territory v. Vialpando, 8 N. M. 211, 219; Territory v. Herrera, 11 N. M. 129, 142; United States v. Griego, 11 N. M. 392, 409; Territory v. McGrath, 16 N. M. 202, 208-209.

Granting or denying of motion to strike evidence after full opportunity has been given to object at time it was introduced lies in the discretion of court, and appellate court reverses then only for abuse of discretion.

Allen v. Smith, 22 Ala. 416; King v. O'Brien et al., 46 Cal. 561; People v. Wallace, 89 Cal. 158; Warden v. Bradbury, 167 Pa. St. 523, 529; Judge of Probate v. Stone, 44 N. H. 593; Dugger v. McKesson, 100 N. C. 1; McInroy v. Dyer, 47 Pa. St. 118; People v. Long, 43 Cal. 444; People v. Rofle, 61 Cal. 540; Sharp v. Webber, 89 Ill. App. 474; Toledo St. L. & W. R. Co. v. Stevenson, 122 Ill. App. 654; Falvey v. Jackson, 132 Ind. 176; Bower v. Bower, 142 Ind. 194; Cronk v. Railroad Co., 123 Ia. 349; State v. Johnson, 23 Minn. 569; State v. Lohman, 175 Mo. 619; 12 Enc. P. & P. 176; Billingsley

State v. McKnight. 21 N. M. 14.

v. State, 96 Ala. 126; Poindexter v. Orr, etc., Co. v. Oregon R. R. Co., 33 Mont. 338; Watts v. Howard, 70 Minn. 122, 123; Hatch v. Attrill, 118 N. Y. 383, 387; Clarke v. Douglass, 58 Neb. 571, 574, where the motion was made in the middle of cross-examination; Newman v. Buzard, et vir, 24 Wash. 225, 228-229; Jarvis v. State, 138 Ala. 17, 37; Robinson v. Snyder, 25 Pa. St. 203, 207.

Extent and limitation of cross-examination rests in discretion of trial court.
Territory v. Claypool et al., 11 N. M. 568, 580.

Trait of character directly involved only may be shown.
Underhill Crim. Ev., pp. 96, 97; 1 Wigmore Ev., sec. 59; 16 Cyc. 1266; 21 Cyc. 906; Hughes on Ev., sec. 7; 12 Cyc. 413; 1 Wharton's Crim. Ev., sec. 59; 1 Greenleaf Ev., p. 39. For random cases illustrating text see: People v. Chrisman, 135 Cal. 282; Kee v. State, 28 Ark. 155; State v. King, 78 Mo. 555; People v. Farr, 43 Cal. 137; Walker v. State, 102 Ind. 503.

If sole fact to be proved is that letter or telegram was sent or received the writing need not be produced.
Underhill Crim. Ev., sec. 54; Connors v. State, 23 Tex. App. 378; Holcomb v. State, 28 Ga. 66; Tatum v. State, 82 Ala. 5.

For full discussion of introduction of clothing of deceased, see:
2 Wigmore on Ev., sec. 1157; Hughes on Ev., sec. 11; 4 Enc. Ev. 275; 2 Wharton's Crim. Ev. (10th ed.), sec. 941; Underhill Crim. Ev. 59; Hughes on Ev., sec. 21; Dorsey v. State, 107 Ala. 157; Burton v. State, 107 Ala. 108; Crawford v. State, 112 Ala, 1; Watkins v. State, 89 Ala. 82; King v. State, 13 Tex. App. 277; Hart v. State, 15 Tex. App. 202.

For correct instruction as to character see:
12 Cyc. 620, 621; Wharton on Ev. 241, 245; Underhill Crim. Ev., sec. 80; 1 Wigmore on Ev., secs. 55, 56.

Cautionary instructions on circumstancial evidence should be given when properly applicable (Underhill Crim. Ev., sec. 6; 2 Whart. Crim. Ev., sec. 876; 12 Cyc. 633) but are immaterial where demonstrative evidence is relied upon, rather than circumstantial evidence.

### BRIEF OF APPELLANT ON RE-HEARING.

Sec. 2794, Code 1915, makes it compulsory on court to instruct jury on all of the law of the case, whether requested so to do or not. See, also, sec. 4214.

Defendant's conviction deprives him of due process of law.

Sec. 1, 14th Amend. Const. U. S.; Missouri Pac. Ry. Co. v. Humes, 115 U. S. 519; Cleveland, etc., Co. v. Backus, 133 Ind. 513; Ex parte McCluskey, 40 Fed. 74; Hurtado v. Cal., 110 U. S. 535; Walker v. Sauvinet, 92 U. S. 92.

The rights of the defendant and the duty of the court are equally under the finger of the law.

State v. Bates, 14 Utah, 300.

### STATEMENT OF FACTS.

Appellant, Frank McKnight, was indicted jointly with his wife, Mary McKnight, for the murder of one Claude Sweazea. The trial resulted in the conviction of the appellant, Frank McKnight, of voluntary manslaughter, and the acquittal of the wife, Mary McKnight, from which verdict and judgment of the trial court this appeal was taken.

Prior to October 10, 1913, the date of the homicide, the wife of the appellant was postmistress at Ranger Lake, N. M., in Chaves county, where she resided with her husband and children in a house which was also used as the post office. The only persons present at the time of the homicide were the appellant and the wife, Mary McKnight, who testified that about sundown of the said 10th day of October, 1913, the deceased, a young man about 25 years

State v. McKnight, 21 N. M. 14.

of age, entered appellant's home in an intoxicated condition, cursing the appellant, who arose and told the deceased that he could not talk that way in his house, ordering him to depart therefrom. The deceased replied that he would go when he got good and ready, and that when he went out, appellant would go with him, and continued to curse and defy appellant, who retreated to the east wall of the post office, and that deceased continued to advance and make demonstrations as if to draw a gun. Appellant procured a gun and fired two shots in rapid succession, whereupon the deceased reeled across the room and out of the front door into the yard, where he was followed by appellant for a short distance from the house, when the deceased turned again as if to advance upon appellant, with his hand extended as though he had a gun and was about to shoot, whereupon appellant fired several additional shots, which resulted in the death of Sweazea.

. The defense attempted to show that the deceased, Claude Sweazea, had taken advantage of the absence of appellant, who left home on the 26th day of June, 1913, for the purpose of going to Texas to obtain work; that knowing of such absence of appellant, he made an assault upon the wife, Mary McKnight, on the 27th day of June, attempting to commit a rape upon her, but was frightened away and did not accomplish his purpose; that returning, however, on the 30th day of June, it is claimed, he accomplished a rape upon the wife of appellant, after overcoming her resistance by the administration of chloroform. It is further contended by the defense that on the 7th or 8th day of July, the deceased again returned to the home of appellant, gaining entrance thereto by false pretenses, and the second time accomplished a rape, again making use of chloroform to accomplish his purpose.

By the state it is contended that the record discloses that the deceased, while approaching the post office at Ranger Lake, immediately preceding the homicide, met and conversed with one Carroll Mixon for a few moments, and this witness testified that the deceased was not in an intoxicated condition at the time. Other evidence in the

record discloses that the deceased had been drinking earlier in the day.

It was apparently the theory of the prosecution that illicit relations between the wife of appellant, Mary McKnight, and the deceased, Sweazea, had been continuing for some period of time. It appeared that the appellant had not returned to his home after his trip to Texas until about the 16th day of July, remaining for a few days, when he again left, and did not return until the 16th day of August. The witness, Mary McKnight, co-defendant with appellant, testified that she did not tell her husband concerning the alleged assaults by the deceased until his return on the 16th day of August, and that her failure to make an earlier disclosure was due to her desire to first get out of the country, as she was afraid of the deceased, who had made threats. The state evidently believed that she did not make the disclosure concerning the alleged assaults until she found herself in a condition of pregnancy, which there is some evidence tending to show she endeavored to relieve by the use of drugs. The evidence of the state is largely circumstantial, or dependent upon alleged admissions, chiefly by the wife of appellant, as very largely testified to by a witness, Eva Harrington, who was a neighbor of the McKnights, and was called in to attend Mrs. McKnight during the evening and night following the homicide, and whose testimony will be more largely referred to in the opinion.

The evidence is very voluminous, and will be more particularly referred to in connection with the numerous assignments of error.

### OPINION OF THE COURT.

HANNA, J. (after stating the facts as above.)—It is conceded that the first four assignments of error are not available on this appeal because they affect, primarily, the co-defendant, Mary McKnight, who was acquitted by the verdict of the trial jury.

[1]The fifth assignment of error presents for the consideration of this court the ruling of the trial court admitting in evidence the testimony of the witness Eva Har-

rington, while testifying as a witness for the state, relative to an alleged conversation with the wife of appellant, wherein Mrs. McKnight is alleged to have stated that she had been taking camphor gum and aloes to relieve a condition of pregnancy. It is contended by appellant that this testimony was incompetent for any purpose, and highly prejudicial to the defendant, Frank McKnight. The witness, Eva Harrington, in her direct examination, had so testified as to the alleged conversation. On her cross-examination it was attempted to be shown that on the evening and night of the homicide Mrs. McKnight was in so nervous a condition that she had required the attention of a ·physician, who had found it necessary to administer some narcotic, in hypodermic form, for the purpose of quieting Mrs. McKnight, who remained in a semi-conscious state after the hour of 10 o'clock, when the narcotic was administered, for which reason, it was contended, Mrs. McKnight was in no condition to have the alleged conversation with the witness Eva Harrington. It was further attempted to be shown by the witness Eva Harrington that Mrs. McKnight had, for several months, or since the first alleged assault, been in a highly nervous state, the purpose evidently being in this connection to prove that the nervous condition resulted from the alleged assaults. On redirect examination the state brought out by the same witness, Eva Harrington, further evidence as to the use of drugs by Mrs. McKnight, to produce a miscarriage, and apparently attempted to show by this line of examination that the nervous condition of the defendant, Mary McKnight, was due to the use of drugs for the purpose indicated. It would therefore seem to be clear that the defense had made the nervous condition of the defendant Mary McKnight a material fact in the case, and that it would be improper to restrict the state on redirect examination in the manner which it is here urged the state should have been restricted. The nervous condition, as brought out on cross-examination, was new matter, so far as the witness Eva Harrington is concerned, and the state certainly had a right to cross-examine as to this new mat-

ter.   Authorities might be multiplied, but the law is well stated in the case of Bassham v. State, 38 Tex: 622, in which case the Supreme Court of the state of Texas said:

"When a party, on cross-examination of a witness, seeks to draw out new matter not inquired of on the examination in chief, he makes the witness his own for that purpose, and the opposite party may insist upon a cross-examination."

With this holding we fully agree.

There is also another element in this connection we desire to note in passing, which is that the trial court, in its instructions to the jury (instruction No. 31), charged the jury that, in determining the guilt or. innocence of the defendant Frank McKnight, it should not consider the statements of Mary McKnight (referring to the alleged conversation between Mary McKnight and Eva Harrington), as evidenue against the defendant Frank McKnight, but that such evidence should be eliminated and considered only in determining the guilt or innocence of the defendant Mary McKnight.   This being true, we cannot see how it could be considered that the appellant can be said to have been prejudiced by the testimony in question.

The eighth assignment arises out of the admission of evidence of the witness Eva Harrington, relative to an alleged conversation between the witness and the defendant Mary McKnight, wherein Mary McKnight is asserted to have told the witness that the defendant, Frank McKnight, had borrowed $300 from a certain young man, which appellant contends the record necessarily shows was the deceased, which evidence was wholly immaterial and incompetent, and highly prejudicial to the defendant Frank McKnight.   The evidence was offered in rebuttal, and for the purpose of impeachment.   The defendant Mary McKnight, while on the stand, having been asked whether her husband owed Sweazea, and whether or not she had stated, about the 25th of June, to Eva Harrington, that Sweazea had loaned her husband, or a certain young man had loaned her husband $300, she replied, "No, sir; I did not."   She had previously testified that

her husband owed Sweazea $50, the only indebtedness that she knew of. The impeaching question, addressed to the witness Eva Harrington, was as follows:

"Q. I will ask you to state whether or not Mrs. McKnight told you along in the month of June, near the middle of the said month, that a certain young man in that community had loaned Mr. McKnight $300"

—to which the witness replied, "Yes, sir." It is contended that this was an attempted impeachment upon immaterial matter. It is sufficient to observe in this connection that the answer to the impeaching question was made before' objection, although it would seem that tne answer was so promptly made that counsel for the defense did not have time to offer an objection. Counsel, however, could have promptly called the attention of the court to the objection by a proper motion to strike the testimony, and this was not done. While we do not desire to take a technical advantage of counsel under the circumstances, we do not deem the alleged error of such a prejudicial character as to require a reversal of the case, by sustaining a technical objection, which was not sufficiently presented to the trial court, and therefore must 'overrule this assignment of error.

The seventh assignment of error presented by the brief and argument of appellant is based upon the testimony of the witness, Dr. Charles Bridges, concerning a conversation had by him with the defendant Frank McKnight prior to the homicide, concerning which the witness testified that McKnight came to him and told him that his wife was pregnant and that the child was Claude Sweazea's, or that he believed it was, requesting of the doctor whether he could do anything to relieve her condition. It is contended by appellant that the admission of this testimony was incompetent and immaterial, and highly prejudicial to appellant. By the state it is pointed out that the testimony is material in view of its theory of the case, and that the evidence to some extent tends to show a motive for the homicide which later occurred. It also may be said that it has a tendency to demonstrate that

the defendant Frank McKnight may have felt a natural resentment, which would tend to be proof of the existence of malice. For the reasons stated, we do not think that this testimony was improperly admitted by the trial court.'

[2]    The next error assigned, as presented by the argument of appellant and numbered 8 in his brief, is predicated upon the action of the trial court in overruling a motion of the defendant at the conclusion of the taking of the evidence in chief on the part of the state, to instruct the jury to disregard the testimony of a witness, Carl Harrington, who testified concerning a conversation he overheard at appellant's home, just prior to the homicide, between the defendant, Frank McKnight, and one B. C. Campbell, at which time it is testified, the appellant exhibited a large hunting knife to Campbell, and said: "Campbell, look here, I would a heap rather a man would draw a six-shooter on me than this thing, especially as close as I am to you"—the witness further testifying that the appellant said that, "The knife is liable to be used some day." It is pointed out by the Attorney General that no objection was made to the offer of this testimony, and that the first attack upon it was made at the conclusion of the evidence in chief for the state, by the motion to instruct the jury to disregard the testimony. By the appellant it is urged that no objection was made at the time of the introduction of the testimony, because it was understood that the state would undertake to connect the deceased with the transaction, and that therefore the defense did not move to take the testimony from the consideration of the jury until after it developed that they had not so connected it with the deceased. The record discloses that the defendant had taken Campbell to one side, and that the deceased was approaching the place of the homicide, and within a short distance therefrom. We believe that the evidence was admissible, under the circumstances, as tending to show the attitude of the defendant at this time, immediately antecedent to the act of homicide. But even though this is not correct, and the evidence should not have been admitted, nevertheless we do

State v. McKnight, 21 N. M. 14.

not think that the appellant can be heard to object at this
time to the action of the court in overruling his motion.
We believe it was within the sound discretion of the trial
court to grant or disallow the motion at the late hour of
its interposition.   In order that the trial of a cause of
this importance may be conducted in an orderly way, with-
out incumbering the record with a great deal of imma-
terial, irrelevant, or incompetent testimony, to be subse-
quently stricken from consideration by the jury, which
would have a tendency to bring about an almost certain
state of confusion in their minds, it is necsesary that the
parties to the cause be required to make timely objection,
not only that the jury may not be confused, but in fair-
ness to the opposing side, and in order that the attention
of the court may be directed to the objection at the time
the question is under consideration and all the facts clear-
ly apparent to all parties and the court.   Therefore the·
necessity for such a rule has given rise to a general hold-
ing by the courts of this country that the granting of a
motion to strike, under such circumstances, is largely a
matter of discretion with the trial court.   It has been
well said that the rule is one of practice, and applied only
to save the time of the court, which otherwise would be
uselessly consumed in listening to testimony and then
striking it out.   The cases holding to this rule are col-
lected in 12 Ency. of Evid. 180.

A well-considered case from the Supreme Court of Min-
nesota is that of State v. Johnson, 23 Minn. 569, where
that court said:

"The objection to a part of this evidence was as apparent
when it was offered as after it was in, and by not objecting
to it when offered, defendant lost his strict right to have it
excluded.   If a party does not object to evidence offered, it
is discretionary with the trial court to grant or refuse his
motion, after it is received, to strike it out, upon an objec-
tion. that was apparent to him, and which he might have
made when the evidence was offered."

There are cases holding that a motion to strike, made
at any time, is timely, and each case should rest upon a
careful consideration of the facts, which ought to be con-·

trolling upon the trial court in its exercise of a sound discretion in the premises. Generally speaking, however, in the necessity for the expedition of the trial of causes, we believe it to be the sounder policy to adopt the rule which we are disposed to adhere to, and as herein enunciated. Had the state announced that it would connect this evidence with the deceased, the rule would have been different. But no challenge was interposed and no such undertaking was made. In fact, the Attorney General points out that the witness testified that the appellant was gesticulating and pointing toward the deceased, so that it might be considered that the testimony in question was sufficiently connected with the deceased to justify its admission, but the question is otherwise to be disposed of, as we have indicated.

The ninth error assigned and presented for our consideration is predicated upon the admission in evidence of the testimony of the defendant Frank McKnight upon cross-examination, relative to the fact that defendant had worked on a fence and windmill with the deceased shortly prior to the homicide, and that the deceased had eaten a meal with the defendant at defendant's home, at about the same time. It is contended that no reference was made to these facts by the witness on direct examination, and that it was improper, on cross-examination, to inquire into these matters, because so to do was to violate the rule governing cross-examination, and resulted in a highly prejudicial situation so far as the appellant is concerned. We cannot see anything in this contention. The witness had testified that his wife first told him, on August 16th, of the alleged acts of rape. The evidence of the witness, as a whole, tended to create the impression in the minds of the jury that the alleged outrages perpetrated upon the wife had so preyed upon the mind of the defendant that, as testified to by him:

"When the advancement was made toward me [referring to the advancing of the deceased at the time of the homicide] my mind was on my family and my home, the way it had been ruined, and on my own life, and I drawed this gun and fired." .

State v. McKnight, 21 N. M. 14.

Bearing this fact in mind, we think it would be proper to inquire of the witness concerning his relations with the deceased during the interval between the time he was advised of the alleged conduct and acts of the deceased and the time of the homicide, and the questions referred to, as to his work with the deceased, and his having the deceased partake of a meal with him at his home during this time, tend to throw light upon the credibility of the witness concerning the statements made in his direct examination. It might also be said that the questions were proper, as the basis of a proposed impeachment of the witness, had he failed to admit the conditions sought to be shown. We, therefore, do not consider that this assignment of error is well taken.

[3] The tenth error assigned and presented by the argument of appellant is based upon the exclusion of evidence tendered by the defense to prove the good character of the defendant Mary McKnight for chastity and conjugal fidelity. It is contended by appellant that this evidence was tendered both before and after the defendant had testified as a witness, and that the exclusion was highly prejudicial to the defense, because the evidence went to the credibility of the said defendant as a witness. The theory of this contention is that the state was permitted to introduce evidence in its case in chief, over objection, relative to the defendant Mary McKnight having had sexual intercourse with the deceased, and by the action of the trial court in excluding evidence of good character, her credibility as a witness was destroyed before she had placed her character in issue, by any offer of proof upon that subject. This contention of the appellant is not entirely supported by the record in the case. It is clear that the evidence complained of, consisting of admissions by the defendant Mary McKnight as to the alleged acts of rape and attempted rape, was offered by the state for the purpose of showing a motive for the crime. It does not appear that this evidence was offered for the impeachment of the defendant Mary McKnight, and it could not have been properly so offered at the time it

was tendered. We cannot consider that the evidence was offered as an attempted attack upon the character of the defendant Mary McKnight, and it does not seem to have been so treated at the trial.

[4] A more serious question, however, is presented upon the inquiry of whether or not the defendant was deprived of her right to offer affirmative evidence of her good character, and to prove that it was unlikely, by reason of her possession of such a reputation, that she should have committed the act charged against her. The law upon this subject is well stated in Wharton's Criminal Evidence, vol. 1, § 57, in the following language:

"Character is always presumed to be good until it is impeached, but, notwithstanding such presumption, it is always relevant for the defendant to offer affirmative evidence of character, and to prove that it was such as to make it unlikely that he would have committed the act charged against him."

However, as stated by the same author, in section 59 of the same work, the proof of character, to be relevant, must be confined to the nature of the offense under charge and bear some pertinent analogy and reference to it. As held by the Supreme Court of Indiana, in the case of Walker v. State, 102 Ind. 502, 1 N. E. 856:

"Evidence that the previous character of the appellant for peace and quietude was good would have been admissible, but the previous moral character of the appellant was not a proper subject of inquiry in a case like this." (This case being one of homicide, as is the case at bar.)

See, also, State v. Dalton, 27 Mo. 13; People v. Van Gaasbeck, 189 N. Y. 408, 82 N. E. 718, 22 L. R. A. (N. S.) 650, 12 Ann. Cas. 745, in which latter case the New York Court of Appeals, in explanation of the foregoing rule, said:

"The fact sought to be established by evidence bearing upon the character of an accused person is the improbability that the defendant would commit the crime of which he is accused. The evidence being adduced for this purpose, it is manifestly proper, in order that it may be most useful in

State v. McKnight, 21 N. M. 14.

the guidance of the jury, that it should not be confined to the general good reputation of the defendant, but may be extended to his reputation in respect to the particular traits involved in the accusation."

With this statement of the law we fully agree, and will not multiply authorities further than to refer to the following text books, which are amply supported in their conclusions by numerous citations of authority: Hughes on Evidence, Title, Character, § 7; 1 Wharton on Criminal Evidence, § 159; 1 Greenleaf on Evidence, page 39.

Applying this rule, that evidence of the general reputation of one accused of crime as to the particular traits involved in the issue is admissible in his favor, to the facts of the present case, we find that the exclusion of the evidence offered as to the alleged good reputation of the defendant Mary McKnight for chastity and conjugal fidelity was proper, as we cannot see how this proffered testimony would have tended to prove that it was unlikely that she would have committed the act of homicide with which she was charged. Therefore, under the rule, no error was committed by the trial court in the exclusion of the testimony.

Assuming, however, that the contention of appellant be correct, and that this evidence of good character of the defendant was wrongfully excluded, it cannot be said to have been prejudicial error, as to the appellant, Frank McKnight, unless it affected the credibility of Mary McKnight as a witness, by reason of the fact that the error, if it existed, would not be available here, owing to the fact that the defendant Mary McKnight was acquitted by the jury, and we are only concerned, therefore, in that light of the facts, with inquiry as to whether or not the credibility of Mary McKnight as a witness was destroyed, or was so prejudiced as to amount to prejudicial error of which the co-defendant, Frank McKnight, can be heard to complain.

We have pointed out that the evidence was not offered as impeaching evidence, and as a matter of fact, our examination of the record discloses that the alleged attack upon the character of Mary McKnight was almost entire-

ly based upon her alleged admissions as to the assault, or rape, and this testimony did not vary materially from the testimony of Mary McKnight while on the stand as a witness for the defense. Only in minor details does there seem to be any variance, and for this reason we do not see how the jury could have arrived at a conclusion based upon this evidence, which would have been prejudicial to the credibility or standing of the defendant. Mary McKnight as a witness. This being true, there certainly was not prejudicial error which the appellant can be heard to complain of.

[5] The next and eleventh assignment of error is predicated upon the exclusion as evidence of an exhibit, consisting of a letter written by the witness B. C. Campbell to the special prosecutor, and identified as such, which was offered in evidence upon the theory that the witness, who had been questioned on cross-examination as to whether or not he had left the country after the homicide, concealing himself and refusing to divulge his knowledge of the facts in the case, had a right to show that he had written the special prosecutor, advising him of his whereabouts and offering to testify as a witness in the case, and in such letter had informed said prosecutor fully concerning his knowledge of the case. It is not questioned by appellant that this witness had fully testified concerning the facts disclosed by the letter, and had also testified that he had written a letter for the purpose indicated, and we cannot see what purpose would have been subserved by the introduction of the letter in question. It seems to us that the sole fact which would have been proved by the admission in evidence of the letter would have been the fact that the letter was sent, as has been testified by the witness, or, in other words, that the admission of the letter might have been some corroboration of the statement of the witness that he had written such a letter and sent it to the special prosecutor. No substantial rights of the parties or the witness were based upon the facts set out in the letter. And it was therefore not necessary to produce the same as primary evidence of such

facts. It was held in the case of Conner v. State, 23 Tex. App. 378, 5 S. W. 189, quoting from the syllabus;

"The rule of evidence which would require the state to produce a telegram as the best evidence of its contents, before resorting to secondary evidence to prove the same, obtains when the contents of the telegram become essential in determining the rights of parties to it. The object sought in this case was not proof of the contents of the telegram, but proof only of the independent fact that the telegram purporting to have been sent by the absent witness was received by the witness on the stand. Held, that the evidence was properly admitted."

In the case at bar, the witness had testified to the fact that he had written the letter, and had testified to the contents thereof, and the introduction of the letter in question would have been simply secondary evidence of the fact that he had written the letter, having so testified, and therefore it was not erroneous to exclude the same. Or, as stated by Underhill on Criminal Evidence, § 44:

"If the sole fact to be proved is that a letter or telegram was sent or received, the writing need not be produced."

From which, in our opinion, it would necessarily follow that there was no error in excluding the letter in question.

[6] The eighteenth assignment predicates error in permitting a witness, Albert Mayfield, to identify the clothing of the deceased, worn at the time of the homicide, and in the admission of such clothing as evidence. Appellant contends that the sole purpose for which clothing may be admitted as evidence is the identification of the location of the wounds inflicted, and that by reason of the fact that another witness, one Dr. Joiner, had fully testified, as a witness for the state, concerning the location of the wounds, and that there was no controversy relative thereto, the appellant was prejudiced by the admission of this evidence, which had a tendency to inflame the minds of the jury. The state takes sharp issue with the contention of appellant in this connection, and points out that a controversy did exist as to the location

of the wounds, and that it was material to show that certain of the wounds were in designated locations; that at the trial of the cause appellant contended that one of the bullets did not actually penetrate the left ventricle of the heart, and therefore was not instantly fatal. We believe that the contentions of the state in this connection are supported by the record, and it is a well-settled principle that, in homicide cases the clothing of the victim, when properly identified, may be produced as demonstrative evidence on the theory that it is a part of the res gestae, and tends to inform the jury of the character and nature of the wounds, the motive of the crime, the manner and means of death, the proximity of the defendant and the deceased when slain. Underhill on Criminal Evidence, § 48.

[7] But while recognizing the general rule, as stated, it must always be borne in mind, as pointed out by Mr. Wharton in his work on Criminal Evidence, vol. 2, § 941,. that while clothing is in the nature of demonstrative evidence, it does have a strong tendency to rouse feelings of prejudice or passion, and the introduction of articles of clothing in evidence should not be permitted unless they serve the purpose of identifying the deceased, or honestly explaining the transaction. Otherwise the introduction of such articles of clothing is irrelevant, and constitutes prejudicial error, and this is particularly true when the clothing is displayed in such a manner as to rouse prejudice or passion.

By reason of the controversy in the case at bar as to the location of the wounds, as well as concerning the distance from which the first shots were fired, we conclude that the offer of the evidence in question did serve an honest and useful purpose in the trial of the cause, and therefore the trial court did not err in admitting the clothing of the deceased in evidence.

The thirteenth error assigned charged that the trial court erred, while the witness R. B. McKinney was testifying as a witness for the defense, in excluding the testimony of said witness that the defendants had made pre-

parations to leave their home at Ranger Lake, and were
in the course of disposing of their property for that pur-
pose, and that they were so leaving for the purpose of
keeping down the disgrace which had resulted to them by
reason of the alleged outrages by the deceased, and for the
further purpose of avoiding trouble or conflict between the
deceased, Claude Sweazea, and the defendant Frank Mc-
Knight. This evidence was excluded by the trial court
upon the ground that the matter had not been inquired
into on cross-examination, the tender being made during
the redirect examination of the witness. In this we be-
lieve that the trial court was not in error, although we do
not overlook the fact that appellant contends that this
offer of the evidence in question was made for the purpose
of showing the real intent of the defendant Frank Mc-
Knight in rebuttal of insinuations alleged to have been
brought out on cross-examination relative to some sup-
posed threats in connection with the homicide. The wit-
ness was examined on cross-examination, to the following
effect:

"Q. Didn't you tell your son [referring to Frank McKnight]
the day before this [referring to the homicide] that there
was going to be serious trouble, and for him to look out?"

—to which the witness responded, "Not on your life I
didn't." In this connection the witness endeavored to
show, and was permitted to show, that what he had said
about trouble to Frank McKnight referred to another
transaction in connection with the proving up of a home-
stead of the deceased, concerning which, it was contended
by the witness, the deceased was not qualified to make
final proof. While it is true that evidence as to the pro-
posed departure of the defendants might have a remote
tendency to explain any vague talk of trouble and threats,
such as here referred to, it is also true that the intention
to leave the country might have existed at the same time
as the other condition in connection with the threatened
trouble, and therefore the tender of proof cannot be said
to be of such character, and so clearly related to the tes-
timony brought out on cross-examination, as to make it

proper redirect examination. It was excluded because it was improper redirect examination, and new matter, the court clearly showing that he so considered it. And we cannot see that he was so clearly in error in this conclusion, arrived at as to justify a reversal of the cause, although we do see a possible remote relation between the two subjects of inquiry. It is not a question of whether the testimony offered in evidence would have been admissible as original testimony, but is solely a question of whether error was committed in the exclusion at the time of its offer, during the redirect examination of the witness, for the purpose of explaining the testimony of the witness as brought out on cross-examination. In our view of the matter, the court was not in error in excluding the tender at the time made.

[8] The fourteenth assignment, and the fifteenth, sixteenth, eighteenth and nineteenth assignments as well, predicate error upon the giving by the court sua sponte of instructions numbered 20, 21, 22, 25, 26, 27, and these assignments can be briefly disposed of, in the light of former decisions in this court, upon the ground that nothing in the objection to the instruction pointed out the grounds of objection, and that no other instruction conforming to the views of appellant was tendered to the court as a substitute. As was held by this court in a recent opinion in the case of State v. Gonzales, 19 N. M. 467, 144 Pac. 1144, quoting from the syllabus:

"It is well settled in this jurisdiction that a party who intends to assign error upon an instruction given by the court of its own motion, or upon request of the adverse party, must either tender to the court an instruction which correctly states the law, and except to the refusal to give such instruction, or, he must, by his exception to the proposed instruction, call the attention of the trial court specifically to the error in the instruction proposed to be given, in order that the instruction may be corrected and the error avoided."

It is not contended that appellant conformed to this rule, and the record discloses that he did not do so. Therefore the assignments of error are not well taken.

State v. McKnight, 21 N. M. 14.

Assignment of error numbered 17 is also predicated upon an alleged erroneous instruction, No. 23, as given to the jury by the trial court. Appellant did not conform to his duty to the trial court, in the matter of his exception to this instruction, but it is claimed that a requested instruction by him, numbered 8, should have been given in lieu of the instruction No. 23, as given by the court. The requested instruction referred to is very lengthy, and we need not encumber this opinion by going into its numerous statements of the law, considering it sufficient to point out that the position of appellant is that the instruction, as given by the court, failed to state that the appellant must be acquitted if the jury had a reasonable doubt that the defendant had reasonable grounds to apprehend danger to himself when he fired the fatal shot. The instructions of the trial court as a whole advised the jury, and correctly so, as to the legal justification for the killing, and it would have been largely a repetition of the law given in other instructions of the trial court to have gone into the element of reasonable doubt as to justification, and we therefore conclude that, the matter having been fully covered, no error was committed by the trial court, as is here contended. We are of the opinion that the instruction given sufficiently and adequately stated the law, and certainly did so when considered in the light of all the instructions given by the court, and no prejudicial error is pointed out by the appellant.

The twentieth assignment predicates error upon the giving by the court sua sponte of instruction No. 30, upon the ground that said instruction is not a full and complete declaration of the law as to the consideration to be accorded to the evidence upon the defendant's good character. The instruction given by the court in this connection is asserted by the appellant to have entirely ignored an important rule of law, relative to the weight and consideration which should have been credited to the previous good character of the defendant, in that the evidence of such good character, if satisfactorily proven, may

be sufficient within itself to raise a reasonable doubt as to the guilt of the defendant.

The defendant requested an instruction, numbered 25, which was refused by the court "except as otherwise given." The essential portion of the refused instruction was, so far as it supported the contention of appellant:

"If after the consideration of all of the evidence in the case, including that bearing upon the good character of the defendants, taken in connection with the other facts and circumstances in the case, the former good character causes you to entertain a reasonable doubt of the guilt of the defendants or either of them, * * * it is your duty to return a verdict of not guilty as to such defendant or defendants concerning whom you have such reasonable doubt."

The instruction given by the court pointed out that the defendants had, a right to show good reputations, as a circumstance tending to show the improbability of their guilt. And further pointed out that while the law presumes that citizens of good character are less likely to commit the crime charged than those whose characters are not good, yet that if the jury believed the defendants guilty of the crime charged, upon consideration of all the evidence, including the evidence touching good character, it should not acquit solely on the ground of good character. There is but little difference between the requested instruction and the one given, particularly when we consider that another instruction clearly pointed out the duty of the jury to acquit, if it entertained a reasonable doubt as to the guilt of either of the defendants, and the instructions should be read as a whole.

It is our opinion that the law upon this subject is correctly stated in 12 Cyc. at pages 620, 621, where it is said:

"The proper instruction to be given as to character is that evidence of good character is to be considered in connection with all the other evidence upon the question of guilt or innocence, and that when so considered it will sometimes create a reasonable doubt, when without it none would exist, but that evidence of good character is unavailing when, after giving it due weight, the evidence still shows the accused to be guilty beyond a reasonable doubt."

See, also, Wharton on Evidence, 241-245; Underhill on Criminal Evidence, § 80; 1 Wigmore on Evidence, §§ 55, 56.

State v. McKnight, 21 N. M. 14.

While we recognize that the court might have included in the instruction given a more definite statement concerning the element of reasonable doubt, which might arise out of evidence of good reputation, yet, as we have indicated, the court had fully instructed upon the element of reasonable doubt, as applied to the whole evidence, and we cannot agree that a case should be reversed and remanded for new trial upon a technical quibble of this kind, and therefore feel constrained to overrule the assignment of error.

The next error assigned and presented by the argument of appellant, numbered twenty-one, is that the court erred in giving instruction No. 33, by reason of the fact that the said instruction is not a full, complete declaration of the law relative to reasonable doubt. We do not deem it necessary to consider the merits of this assignment because again it appears that no proper exception was taken, and the motion for a new trial did not state the objection now urged. This assignment of error is therefore overruled.

[9] The twenty-second assignment predicates error upon the giving of instruction No. 39 by the trial court, upon the alleged ground that it was prejudicial to the defendant to allow the jury to take with them the indictment in the case to guide them as to the issues. The instruction of the court in this connection was:

"The indictment in this case will be handed you also for your guidance as to the issues, but you must not consider it as evidence in the case."

It is contended by appellant that his instruction numbered 20, refused by the court, correctly stated the law, and that he is therefore entitled to here raise the question as to the insufficiency of the instruction given. The refused instruction was as follows:

"You are further instructed that the indictment against the defendants is no evidence whatever of their guilt; it is simply an accusation or charge, and no juror should suffer himself to be influenced in the slightest degree by the fact that this indictment has been returned against the defendants."

The theory of appellant is that it was the duty of the court to determine the issues involved, and to state them to the jury, and that it was error on the part of the court to refer the jury to the indictment for its guidance as to the issues. It was held by the Territorial Supreme Court in the case of Territory v. Baca, 11 N. M. 559, at 563, 71 Pac. 460, 461:

"That the court cannot, in an instruction, substitute the requirements of the law, that he shall instruct the jury as to what the law is, by any reference to an indictment from which the jury would have to determine what the essential elements of the crime charged are."

This has long been the law in New Mexico, and is based upon statutory requirement, but the application of this principle to the present case is not justified, in our opinion. In the present case it is clear that the court fully instructed as to all the essential elements of the crime, and fully complied with his statutory duty to interpret the indictment and give it legal effect. Had the court in this case failed to fully and clearly instruct the jury as to the law of the case, there would be merit in appellant's contention, but, having done so, the language complained of in the instruction becomes harmless and without any prejudice so far as this appellant is concerned. This is especially made apparent by the fact that the jury found the defendant guilty of manslaughter under an indictment charging murder, and the jury must have understood and relied upon the instructions rather than the indictment as to the issues. This form of instruction should be avoided, but in this case the error, if it was error, was clearly harmless, and in fact appellant does not point out wherein he was harmed or prejudiced by that portion of the instruction here complained of. For the reasons stated, we conclude that this assignment is not well taken.

[10] The twenty-third assignment of error is predicated upon the refusal of defendants' requested instruction numbered 22, which was as follows:

State v. McKnight, 21 N. M. 14.

"You are instructed that the law presumes the defendants innocent of the crime charged in the indictment against them until proven guilty by competent and legal evidence beyond a reasonable doubt, and that if you can reconcile the evidence before you upon a reasonable hypothesis consistent with the defendant's innocence, you should do so, and in that case you should find the defendants not guilty."

As pointed out by the Attorney General, the state first proceeded under the necessity of establishing a case against the defendants by circumstantial evidence. When the defendants, however, took the stand as witnesses, the circumstantial aspect of the case disappeared, the homicide being admitted by the defendants, who proceeded upon the theory of self-defense and sought to justify thereby the act of homicide. Had the case been purely one of circumstantial evidence, the position of appellant in this connection would be a proper one. But, as pointed out, the facts of the case do not bring it within the rule contended for. The law is, we believe, as stated by Underhill on Criminal Evidence, § 6, as follows:

"Where the only incriminating evidence before the jury is circumstantial, it is the duty of the court to. instruct upon the rules of law regulating circumstantial evidence. But if there is any direct evidence tending to show the prisoner's guilt, or if a confession made by him has been proved, such an instruction is unnecessary."

See, also, Wharton's Criminal Evidence, (10th ed.) § 876.

The twenty-fourth assignment assigns error in refusing the defendant's requested instruction No. 10, which, briefly stated, was upon the subject of the right of a defendant upon his own premises, when assailed by another, to repel the assailant by meeting force with force to the extent of taking the life of the aggressor. The requested instruction was very long, and we believe was fully covered by the court in its given instructions numbered 21 and 22. The requested instruction was refused except as otherwise given. After a careful comparison of the several instructions, which we will not incorporate in this opinion, by reason of their length, we are convinced that the jury was

fully and properly instructed upon the several phases of the law brought into question. For which reason this assignment is overruled.

·The foregoing were all of the assignments of error argued and submitted to this court, and after careful consideration of each of them, except as to those which it was ·conceded were inapplicable on this appeal, we find no error in the record, and conclude that the judgment of the district court must be affirmed; and it is so ordered.

ROBERTS, C. J., and PARKER, J., concur.

## ON MOTION FOR RE-HEARING.

HANNA, J.—[**11**] The first proposition urged by appellant in his motion for rehearing is that certain questions, decisive of the cause, and duly submitted to the court for consideration, were not considered by it. These questions have to with certain instructions given by the court, which, it is urged, there was insufficient evidence to support, or which were not correct statements of the law applicable to the case. The matters involved were not overlooked by this court, but in our opinion we held that the several assignments of error referred to were not available because under a former ruling of this court it was incumbent upon a party assigning error upon an instruction given by the court of its own motion, or upon request of the adverse party, to either tender to the court a correct instruction, or he must by his exception to the proposed instruction, call the attention of the trial court specifically to the error in the instruction proposed to be given, in order that the instruction might be corrected and the error avoided. For the reasons stated, it cannot be said that the matters referred to in the first proposition of appellant were overlooked by this court, but, on the contrary, were disposed of by the opinion.

[**12**] The second proposition urged by appellant in support of his motion for rehearing is that the decision of this court, to the effect that a party who intends to assign error upon an instruction must either tender an instruction which correctly states the law, and except to

the refusal of the court to give the same, or must, by his exception to the proposed instruction, call the attention of the trial court specifically to the alleged error in the instruction proposed to be given by the court, in order that the same might be corrected and the error avoided, is in conflict with a controlling provision of a statute of New Mexico, viz., section 4214, Code 1915. Appellant contends that he did except to the giving of the several instructions complained of, but admits that the exceptions were general and did not specifically point out the ground of objection, and asserts that this was all he was required to do under the law, and that the ruling of the court in this case and in the case of State v. Gonzales, 19 N. M. 467, 144 Pac. 1144, is necessarily in conflict with the section of the statute referred to. That portion of section 4214 upon which appellant relies is as follows:

" * * * And it shall not be necessary to object or except to the giving or refusal to give instructions to a jury in order to secure a review of the same on writ of error or appeal, but such instructions shall be reviewed in the same manner as if such instructions had been specifically excepted to at the time of giving or refusal to give the same."

That section was a part of the chapter on Civil Procedure enacted in 1897 (chapter 73, Laws 1897.)

In Chavez v. Myers, 11 N. M. 333, 68 Pac. 917 (1902), the court, quoting that part of section 3145 (C. L. 1897), which provides that:

"No exception shall be taken in an appeal to any proceeding in the district court, except such as shall have been expressly decided in that court."

—said that

"Consequently we will not reach out and consider, in this appeal, any matter which was not directly decided in the district court."

What the court referred to by saying that it would not reach out and consider matter not directly decided in the district court was theories advanced by appellant which

were not advanced in the trial court. In Territory v. Gonzales, 11 N. M. 447, 456, 68 Pac. 923, 924 (1902) the court held that:

"No exceptions were noted to any of the instructions, as given. The defendant having waived any right he may have had in that behalf, he cannot now urge exceptions for the first time in this court."

In Territory v. Taylor, 11 N. M. 588, 603, 71 Pac. 489 (1903), the court held that error committed on account of a remark of the trial judge was not before the court, because no objection or exception was made or taken thereto. In Neher v. Armijo, 11 N. M. 67, 83, 66 Pac. 517, 518, objection was made, in pursuance of a plea of the statute of limitations, to certain testimony offered by appellees as to rents and profits received by appellant. Exceptions were filed to the referee's report, but not upon the ground that some of the items therein were barred by the statute of limitations. On appeal the question of the application of the statute of limitations was presented to the court, and it was held that, notwithstanding the provisions of section 4214, supra, the question was not before the court because "it is fundamental that errors complained of must be objected to and exceptions saved, or they will be disregarded in an appellate court," and that the section referred to—

"dispenses with formal exceptions, but in no sense dispenses with ob*ections in order to preserve the error complained of. We simply hold that objection must be preserved according to the forms of law to be available in this court."

In Territory v. Watson, 12 N. M. 419, 422, 78 Pac. 504, 505 (1904), the court held that while the court erred in not fully instructing the jury on the law of the case, the appellant could not predicate error thereon because—

"the defendant took no exception to the court's omission to give such instruction, or in any manner called the court's attention to such omission."

See, also, Territory v. Clark, 13 N. M. 59, 61, 79 Pac. 708; Lund v. Ozanne, 13 N. M. 293, 299, 84 Pac. 710; Chaves v. Myer, 13 N. M. 368, 378, 85 Pac. 233, 6 L. R. A. (N. S.) 793.

These cases were all decided when section 4214, supra, was the governing law on the subject. However, in Chaves v. Lucero, 13 N. M. 368, 378, 85 Pac. 233, 6 L. R. A. (N. S.) 793, the court refers to the case of Crabtree v. Segrist, 3 N. M. (Gild.) 500, 6 Pac. 202, where the question seems to have been decided upon the provisions of section 3145 of the Compiled Laws of 1897, which was enacted in 1882, but subsequently repealed by chapter 57 of the Laws of 1907. In 1907 the Legislature enacted what now appears as section 4506 of the Code of 1915. That section provides:

"Exceptions to the decisions of the court upon any matter of law arising during the progress of a cause must be taken at the time of such decision and no exceptions shall be taken in any appeal to any proceeding in a district court except such as shall have been expressly decided in that court: Provided, that no exception will be required to be reserved in the trial of equity cases or cases before the court in which a jury has been waived."

This section practically supersedes section 3145, C. L. 1897. From the date of the passage of section 4506 down to the present time. this court has constantly adhered to the holding that unless some method is adopted by counsel to call to the attention of the trial court in apt time alleged errors or defects in its action, either in giving instructions or with reference to the admission or rejection of evidence, or unless proper instructions are tendered to the court, the party relying upon such alleged errors cannot be heard thereon in this court. The first case which we find where the section above quoted is mentioned is that of Territory v. Leslie, 15 N. M. 240. 248, 106 Pac. 378, 381. There error was attempted to be predicated on certain instructions given by the court, like in the case at bar, but the court, applying section 4506, held that as no specific objection was made to the instructions, the court would not consider the questions attempted to be raised, saying:

---

---

"Exceptions to instructions were not intended to give loopholes for defendants who are guilty to escape punishment, but were designed to enable counsel to point out possible errors made by the trial courts, so that they might be corrected, and a just and proper verdict returned by the jury."

See, also, Childers v. So. Pac. Co., 149. Pac. 307, and Wallis v. Mulligan, 148 Pac. 500. The latest case holding that general exceptions to instructions cannot be made the basis for attacking such instructions in this court is that of State v. Ascarate, 153 Pac. 1036, handed down November 16. 1915. Therefore, we conclude that so far as section 4214 can be said to dispense with the requirement that counsel must specifically point out alleged errors occurring during the progress of a cause, it is repealed by section 4506 of the Code of 1915.

Appellant also contends that he complied with the law, in that he called the attention of the court to the alleged error in his motion for a new trial. While some of the cases seem to permit of the inference that this is sufficient, notably the case of Territory v. West, 14 N. M. 546, 99 Pac. 343, yet it was held in State v. Garcia et al., 19 N. M. 414, 419, 143 Pac. 1012, 1014, that the—

"object of a motion for a new trial, except as to matters addressed to the discretion of the court, such as newly discovered evidence, misconduct of the jury, and the like, is to call to the attention of the court errors which, in the hurry of the trial, he has committed, so that before the case goes to judgment these errors, upon more mature consideration and argument, may be corrected, and a new trial granted. It is not the object of a motion for a new trial to call to the court's attention for the first time some error which counsel for the defendant all the time knew, but which he failed to present to the court in proper form at the time the error was committed."

[13] As a third proposition in support of his motion for rehearing, appellant contends that the defendant, by his conviction at the trial, has been deprived of his liberty without due process of law, in violation of his rights as guaranteed by the Constitution of the United States (section 1. Amendment 14), in that the trial court wholly failed to instruct the jury as to the law of the case relative to self-defense. This proposition is thoroughly and well

argued, but is not available at this time because raised for the first time in the motion for rehearing. It is essential, under the rule of this court, No. 9 that only such questions as are decisive of the cause, and which have been duly submitted by counsel, but have been overlooked by the court or where the decision of the court is in conflict with a controlling decision or provision of statute, to which the attention of the court has not been called through oversight or neglect of counsel, can be presented and considered on rehearing. This question cannot be considered as having been submitted by counsel and overlooked by the court, and it is not contended by appellant that such is the case, nor is it in conflict with a decision of the court or a provision of statute to which our attention had not been directed through oversight or neglect of counsel, but, on the contrary, is a new question raised in this court for the first time on the motion for rehearing. The office of a motion or application for rehearing, under the rules of this court, is solely to secure the correction of an erroneous decision of law made by the court, and manifestly cannot be directed to new matters which are not involved in the original decision. Such is the case as to this last or third proposition, which was not presented to us, or by us considered in the original opinion. As is well said by Mr. Elliott in his work on Appellate Procedure, at section 557, "Original questions cannot be presented by application for a rehearing," and the necessity and reason for this rule is fully discussed by the author.

For the reasons stated, the motion for rehearing is denied.

ROBERTS. C. J., and PARKER, J., concur.