## PEOPLE *V.* NEMER.

1. CRIMINAL LAW—ARSON — CROSS-EXAMINATION ON IMMATERIAL MATTER—APPEAL AND ERROR.

   In a prosecution for arson in burning a competitor's store, where defendant was a witness in his own behalf, cross-examination with reference to a chattel mortgage, the materiality of which is not apparent, *held*, not reversible error, although it might with propriety have been omitted.

2. SAME—TRIAL—STATEMENT OF PROSECUTOR.

   Where defendant had given evasive answers to the prosecutor's questions, the statement of the prosecutor, after obtaining a direct answer, "Yes.   You would like to have them believe that all right.   I consider that a distinct victory," *held*, not reversible error.

3. SAME—DUTY OF PROSECUTOR.

   While the prosecuting attorney stands in a somewhat different position than private counsel, the duty being cast upon him of seeing that defendant has a fair trial, yet he is not required to be supine and is entitled to display a reasonable amount of vigor in the trial of a case so long as he does not transgress the rules of conduct required of a public officer in his position.

4. SAME—CHARACTER WITNESS—COLLATERAL ISSUE.

   Where a character witness for defendant, on cross-examination, had stated that he had heard people say that defendant was a crook, refusal to permit him, on redirect-examination, to answer the question "Did you ever hear anything stated upon authority that would back that assertion," *held*, proper; since the question as to whether those who spoke ill of defendant had any foundation in fact for their views was a collateral issue.

5. SAME—OPINION BASED ON PERSONAL DEALINGS INADMISSIBLE— REPUTATION.

   The answer of a character witness, based on his personal dealings with defendant rather than on what other people said of him, *held*, properly stricken out; since reputation is based on "what people say of a man."

6. SAME—LIMITING NUMBER OF CHARACTER WITNESSES—ABUSE OF DISCRETION.

It being within the discretion of the trial judge to limit the number of character witnesses, in the trial of one accused of arson, it was not an abuse of discretion to limit the number to six.

7. SAME—INSTRUCTION — ARGUMENT OF PROSECUTOR — APPEAL AND ERROR.

An assignment of error attacking the argument of the prosecutor, based on a statement by the trial judge in his charge to the jury that, "the arguments of counsel have been full and fair," *held*, without merit, if prosecutor's argument may be thus attacked.

8. SAME—ACCESSORY—GUILTY KNOWLEDGE—INSTRUCTION.

In a prosecution for arson, where there was testimony that defendant either set the fire himself or procured another to do it, an instruction that "if a person has guilty knowledge of a crime or aids and abets in that crime, but is not an active participant, he becomes a principal in the crime and can be found guilty," *held*, not misleading as giving the jury to understand that defendant was guilty if he knew that the fire was going to be set.

Exceptions before judgment from Ingham; Collingwood (Charles B.), J.    Submitted January 13, 1922. (Docket No. 157.)    Decided March 30, 1922.

Ellis Nemer was convicted of arson.    Affirmed.

*D. G. F. Warner*, for appellant.

*Merlin Wiley*, Attorney General, and *J. A. Boice*, Prosecuting Attorney, for the people.

FELLOWS, C. J.    Defendant was convicted of arson and reviews the case here on exceptions before sentence.    Charles Weller ran a store at Belle Oak in Ingham county.    The building was owned by one Simpson.    David Nemer, a nephew of defendant, ran another store there.    There is a conflict in the testimony as to whether defendant or his nephew owned the store, but if David owned it he was largely indebted to defendant.    About 2:30 o'clock in the morn-

ing of July 22, 1919, the Weller store was burned. It is admitted that the fire was of incendiary origin. There was testimony in the case which would justify the jury in concluding that defendant himself set the fire and they likewise would have been justified in concluding from the testimony that the fire was set by one Mike Bossumer, and there was testimony justifying a conclusion that he was promised $500 by defendant to do the job. At the time of the trial Bossumer was serving a sentence for complicity in the offense, having been convicted on his plea of guilty, and David was under arrest. Both testified on the trial and both implicated defendant as the originator of the plan to burn the store.

Defendant was a witness in his own behalf and several assignments of error deal with what occurred on his cross-examination. The prosecuting attorney was permitted to cross-examine him with reference to a chattel mortgage. We do not perceive the materiality of the evidence sought to be elicited or the harmfulness of the examination. It could have been omitted with propriety but permitting it was not reversible error. Some questions were asked, the answers to which were self-evident. They were doubtless prompted by the evasiveness of defendant in replying to the prosecutor's questions. On one occasion the prosecuting attorney, after obtaining a direct answer, said:

"*Q.* Yes. You would like to have them believe that all right. I consider that a distinct victory."

Error is assigned on this statement. Much space is devoted in the briefs to this incident, in fact, more than it deserves. Defendant's counsel insists that it was innuendo aimed at defendant while the prosecutor insists it was but the expression of satisfaction upon receiving a direct answer to one of his questions. We will not settle this controversy between counsel as we

do not think the remark constituted reversible error. While it is true as contended by defendant's counsel that the prosecuting attorney stands in a somewhat different position than private counsel and in the trial of a case has the duty cast upon him of seeing that defendant has a fair trial he is not required to be supine, nor is he required to apologetically present the people's case. He is entitled to display a reasonable amount of vigor in the trial of a case, and, unless he transgresses the rules of conduct his position as a public officer requires, should not be condemned by this court. This assignment of error is without merit.

Defendant sought by so-called character testimony to establish his good reputation as a law-abiding, upright, honest citizen. It is evident from this record that his counsel was somewhat disappointed in the evidence elicited from some of the witnesses who testified on this subject. One of the witnesses on cross-examination demonstrated that he was basing his opinion on his dealings with defendant and not upon what others spoke of him, and on such cross-examination testified that he had heard people say that defendant was a crook. On redirect-examination defendant's counsel asked him:

"*Q.* Now, just a moment. What you have heard people say, did you ever hear anything stated upon authority that would back that assertion?

"*A.* No, sir."

This answer was stricken out as was the opinion of this witness based on his personal dealings with defendant. We think these rulings were proper. It was the avowed purpose of defendant's counsel to establish as a fact that defendant's dealings with the witness were honest, and that those who spoke ill of defendant could not "back" their "assertions" with proof. Reputation is based on the "speech of people," "what people say of a man." People may or may not

correctly measure their fellowmen. This character of testimony is of importance in criminal trials, and evidence of the good reputation of a defendant as a law-abiding, honest citizen is always received, but this does not permit him to try out the collateral issue that all who speak against him in the community have no foundation in fact for their views. Mr. Wharton in dealing with so-called character testimony says (1 Wharton's Criminal Evidence [10th Ed.], § 58):

"Character, in the sense in which the term is used in jurisprudence, means the estimate attached to the individual by the community, not the real qualities of the individual, as conceived by the witness. It is not what the individual really is, but what he is reputed to be, generally, by the society and the community in which he moves and resides. So, a witness called to speak as to character cannot give the results of his own personal experience and observation, or express his own opinion, but he is confined to evidence of general reputation in the community where the defendant resides or does business. Such a witness, so confined to general reputation, may be examined for the purpose of testing his opportunities of ascertaining that reputation."

The rulings of the trial judge were in consonance with these views.

The trial judge limited the number of character witnesses to six and error is assigned on this action. Neither counsel has called to our attention a case in this court where the precise question was involved. In *Barhyte* v. *Summers*, 68 Mich. 341, this court held that it was error to limit the number of witnesses testifying to the condition of a mare, that being the "vital point" in issue. In *Sulkowski* v. *Zynda*, 160 Mich. 7 (136 Am. St. Rep. 414), it was held to be error to limit the number of witnesses on the question of whether plaintiff's speech was affected before the injury, where that question was the material and disputed issue. In *Riggs* v. *Sterling*, 60 Mich. 643 (1

Am. St. Rep. 554), the power of the court to limit the number of witnesses on the question of value, a matter of opinion, was recognized, and the limiting of the number to six held not to be an abuse of discretion; and in *Detroit City Ry.* v. *Mills,* 85 Mich. 634, where the court limited the number of witnesses to the use of the street and the effect of adopting electricity as a motive power for street cars, Mr. Justice GRANT said:

"Defendants' counsel announced that they had a large number of witnesses to the same effect, and asked permission to call two or three more. The court said that five or six witnesses to any particular fact was sufficient, and that it was clearly within its discretion to limit the number of witnesses; that as to the points already covered defendants would not be permitted to call more witnesses, but as to any new facts they might call more. The circuit judge was clearly right in this exercise of his discretion."

Mr. Wigmore in his work on Evidence (Vol. 3, § 1908) has this to say of character evidence:

"The value of character-evidence, impeaching or sustaining a party or a witness, is commonly much exaggerated; its comparative futility in the ordinary case, and its tendency to degenerate into a mere exhibition of petty local jealousies and animosities, of no real probative service, have induced the courts to concede unanimously that the number of character-witnesses may without disadvantage be limited, as the trial court may prescribe."

While we may not approve all the reasons given by Mr. Wigmore for limiting the number of character witnesses, his announcement of the power of the court and the unanimity of decision on the subject is of persuading force. The supreme court of Illinois is in accord with this court in holding that the number of witnesses as to the controlling fact may not be limited, but that court expressly holds that the number of character witnesses may be limited by the trial judge.

In *People* v. *Arnold*, 248 Ill. 169 (93 N. E. 786), it was held (we quote from the syllabus) :

"The trial court has no power to limit the number of witnesses to be heard on a side as to a controlling fact or facts and circumstances bearing thereon, but it is not error to fix a reasonable limit concerning collateral matters, such as evidence of the good character of one accused of rape."

See, also, *State* v. *Miles*, 253 Mo. 427 (161 S. W. 766) ; *People* v. *Casselman*, 10 Cal. App. 234 (101 Pac. 693) ; *State* v. *Albanes*, 109 Me. 199 (83 Atl. 548). The members of this court well remember that it has been the universal practice in the courts of this State to limit the number of character witnesses. The practice has been so universal and of such long standing that it has not been questioned until this case. An examination of the authorities discloses that the practice is general. The power to limit was in the trial judge. We do not think he abused it in the instant case.

No objections were made to the argument of the prosecuting attorney, nor were any requests preferred on the subject. The trial judge in his charge said:

"The arguments of counsel have been full and fair."

Defendant's counsel assigns error on this and calls attention to numerous excerpts of the prosecuting attorney's argument which he insists should not have been made. It is very doubtful if counsel may thus attack the argument of the prosecuting attorney. But a reading of the argument of the prosecutor which covers some 18 pages of the record convinces us that we should agree with the trial judge. While there may be a sentence here and there that might have been omitted, taken as a whole it fairly presented the case to the jury. If it was harmful to defendant it was because it marshalled the facts of the case which were established by the evidence with convincing force.

The trial judge instructed the jury:

"Ellis Nemer is charged with arson and the crime of arson has been defined to you. Under our law, if a person has guilty knowledge of a crime or aids and abets in that crime, but is not active participant he becomes a principal in the crime and can be found guilty. Such is called an accessory before the fact. If he has guilty knowledge of that fact beforehand or if he aids or abets in it but is not present at the time of the crime, then he becomes a principal, and you, if the evidence convinces you of that beyond a reasonable doubt, you can find him guilty."

Defendant's counsel assigns error on this instruction. He insists that it gave the jury to understand that if defendant knew the fire was going to be set he was an accessory before the fact and guilty as principal. We can not follow defendant's counsel in this contention. It overlooks the fact that the word "guilty" precedes the word "knowledge" in each instance. As applied to the peculiar facts of this case we do not think the defendant was prejudiced by the instruction. It was the claim of the people that defendant asked Bossumer to set the fire and offered him $500 if he would do so. Both Bossumer and David Nemer so testified. Defendant denied this and denied he had any knowledge the fire was going to be set. Upon this record either defendant had no knowledge the fire was going to be set or he had the knowledge of a co-conspirator, a guilty knowledge. Under these circumstances it is difficult to perceive how the jury could have been in any way misled by this instruction.

Finding no reversible error the conviction is affirmed, and the case remanded with instructions to proceed to judgment.

WIEST, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.