MANNAUGH, Respondent, v. J. C. PENNEY CO., et al, Appellants.

(250 N. W. 38.)

(File No. 7435. Opinion filed September 19, 1933.)

*Denu & Philip,* of Rapid City, for Appellants.

*Harold P. Gilchrist,* of Kadoka, *Dan McCutchen,* of Belle Fourche, and *H. F. Fellows,* of Rapid City, for Respondent.

RUDOLPH, P. J. ▮ The plaintiff in this action seeks to recover damages for false imprisonment. The case was tried to a jury, and the jury returned a verdict in favor of the plaintiff, and the defendants have appealed. The facts most favorable to the plaintiff are, as follows: The plaintiff was a clerk in the store of the defendant J. C. Penney Company at Rapid City. The defendant Currel was the local manager of that store. The defendant Bybee operated an investigating agency, the purpose of which was to examine the integrity and efficiency of employees of mercantile establishments. Bybee was employed by the Penney company to investigate the Rapid City store. Bybee made his investigation, unbeknown to the plaintiff, and on the morning of October 24, 1929, the defendant Currel asked plaintiff to get her hat and coat, and meet him at the corner of the Pennington County Bank, which she did. Without saying anything Currel and the plaintiff walked about one block to the Alex Johnson Hotel. Upon inquiry Currel told the plaintiff that there was some one in the hotel who wanted to see them, but he did not know what for. They then went up into a room in the hotel, and a stranger to the plaintiff opened the door, and the plaintiff and Currel stepped into the room. Immediately upon stepping into the room this stranger locked the door and put the key into his pocket. The stranger was the defendant Bybee. After entering the room, the plaintiff sat on a low stool at the foot of the bed; Bybee seated himself behind the desk in front of the window; and Currel sat down in a chair in front of the bed in the passageway between the bed and the door. The plaintiff was immediately questioned concerning the rules and regulations of the store, and concerning the sale of certain articles

which, it was claimed, she had made on the previous day. She was then accused of taking the money from the sale of these articles, which accusations were made in a loud, coarse, and threatening voice. She was told that, so far as her job with J. C. Penney Company was concerned, it had ceased. The plaintiff was told that, if she did not talk, she would be made to talk to a United States Supreme Judge, that she would be sent to the penitentiary for fifteen years, and that she would be made an example of throughout the entire chain of Penney stores. She was further told that, if she did admit that she had taken things and money from the Penney store, while she was clerk, and would settle with them according to their idea, she could leave the room, and she could not leave until she did so. She was further accused of immorality, and was told that, unless she made a confession, she would be exposed in this regard. The plaintiff was in this room under these circumstances until about 3 o'clock in the afternoon. During this time she signed a confession, wherein she stated that she had stolen money and merchandise from the Penney store in a sum not less than $1,233. She also signed a promissory note payable to the defendant Penney company in the same amount. She was then directed to go to the banks in Rapid City and draw out what money she had, which amounted to $116 and to come back and deliver the money to Currel and Bybee, and she was told, if she failed to observe these instructions, that she would be made an example of throughout the entire chain of Penney stores, and she would be exposed for immorality. She was further told to take off a diamond ring she had on her finger, which the defendant Bybee then took from her and said he would keep as security. After she had returned to the room with the $116, which she got from the bank and turned over to these defendants, she was told, "We are going to your room and you are going with us." The defendant Bybee's wife was in the room when the plaintiff returned from the bank, and Mrs. Bybee took hold of plaintiff's arm and walked with her that way until they got to plaintiff's room. The two men followed. At plaintiff's room they found nothing of importance, and the men and Mrs. Bybee left. While in the hotel room, Bybee stated to the plaintiff; "I am going to have $500 and you are going to get it for me. I don't care how you get it—you have a mother, father, sisters and brothers. You are going to get that money and

you are going to have it here by tomorrow noon." The next day the plaintiff went out in the country to see her brother and through him obtained $300. Through a sister she got $50 more, and this amount she took to the hotel room the next morning, and paid it to Bybee, at which time her ring was returned to her. The plaintiff testified that following this transaction she became ill and was in bed for over a month, and that it caused her a great deal of worry and anxiety. She further testified that, after she recovered, she could not get employment, and that she was avoided by the people belonging to different organizations to which she belonged. There was no account of this transaction in the hotel room ever published, and the plaintiff testified that she told no one about it except one of her sisters. So far as the record discloses, the three persons involved and the sister are the only ones who ever knew of this alleged false imprisonment which occurred in the room of the hotel.

We are of the opinion that the evidence is sufficient to justify the verdict of the jury finding a false imprisonment.

"False imprisonment is the unlawful restraint by one person of the physical liberty of another." Tredway v. Birks, et al, 59 S. D. 649, 242 N. W. 590, 591.

"The imprisonment, detention, or restraint upon which an action for false imprisonment may be based may have been effectuated by the employment of actual force, by threats, or by the causing of plaintiff to submit to reasonably apprehended force, or to apparent legal authority. * * * A mere voluntarily remaining in custody upon the part of plaintiff is not sufficient." 25 C. J. 452.

The appellant contends that there is nothing in the evidence to show that the act of the plaintiff remaining in the hotel room was anything but voluntary.

True, the plaintiff did not make any attempt to leave the room, but under the circumstances we do not believe this to be necessary to justify the jury's verdict. Immediately upon entering the room the plaintiff was met by this man who was a stranger to her. According to her testimony, he locked the door and put the key in his pocket. So far as she knew, she was alone in the room with two men, and she was then told that she could not leave the room until she admitted taking money and property from the Penney Company, and had settled with these men according to their idea

of settlement. Under these circumstances, the jury could reasonably conclude that the plaintiff submitted to reasonably apprehended force. She was told that she could not leave the room until such time as she made her confession, and we cannot say that the circumstances surrounding her at the time were such that the jury was compelled to conclude that she could have left had she desired so to do. The court instructed the jury that the "mere fact that plaintiff remained for a long time in the room * * * is not any presumption that the plaintiff was imprisoned there." We are of the opinion that the evidence was sufficient upon which the jury might find that the plaintiff had been unlawfully imprisoned.

The appellant relies to a great extent upon the case of Weiler v. Herzfeld-Phillipson Co., 189 Wis. 554, 208 N. W. 599, 601. While that case is similar in some respects, the many points in which it differs make it no great value as an authority here. That decision was based largely upon the fact that the occurrence was nothing more than an interview betkeen an employer and an employee, and, "as long as she [plaintiff] remained an employee, she was under the directions of her employer." In this case one of the first things plaintiff was told, when she entered the room, was that she was no longer in the employment of the defendant company. The interview in that case was conducted in the regular office of the store, and while the plaintiff was a regular employee. The Wisconsin court said: "It readily may be conceived that such interviews may be held at improper places, at improper times, and conducted in an improper manner." We believe the jury was justified under the facts here in concluding that the interview was held at an improper place, and conducted in a manner such as to constitute false imprisonment.

■ The court instructed the jury that, should the jury determine there was in fact a false imprisonment, in estimating the damages suffered by plaintiff, the jury could take into consideration the mental and physical suffering, and the damage to her reputation. We are of the opinion that submitting to the jury the question of damage to the reputation of plaintiff was error. Reputation is defined by Webster's International Dictionary as: "The estimation in which one is held." Before there could have been any damage to the reputation of this plaintiff on account of this false imprisonment, there must have been some knowledge of the fact that

the plaintiff had been imprisoned. "Reputation is based on the 'speech of people,' 'what people say of a man.'" People v. Nemer, 218 Mich. 163, 187 N. W. 315, 317. "Reputation is merely what is reported or understood from report to be the community's estimate of the person's character." Fine v. State, 70 Fla. 412, 70 So. 379, 381. There can be no damage to one's reputation on account of any certain fact until that fact becomes known in the community. The only possible evidence that could be construed as showing any damage to plaintiff's reputation in this case is that, after the occurrence in the hotel room, her former associates did not treat her in the same manner as they did prior thereto. There is no showing that these former associates had any knowledge of the alleged imprisonment, or that this fact was known to any one in the community except those actually concerned. We do not believe that, without some evidence showing that this imprisonment was known to some extent in the community, the jury would be justified in finding that the imprisonment damaged the reputation of the plaintiff. Without any evidence that this occurrence was known, it cannot be said that it affected the estimation in which plaintiff was held. We think the court should have limited the question of the amount of damage suffered by the plaintiff to her mental and physical suffering endured on account of the false imprisonment.

We are of the opinion that a new trial must be had because of the error in submitting to the jury the question of the damage to plaintiff's reputation, and it, therefore, becomes unnecessary for us to consider the amount of the verdict as returned, and as reduced by the trial court. We do not believe the other alleged errors are apt to occur in a retrial of this case.

The judgment and order appealed from are reversed.

All the Judges concur.

CAMPBELL, J. (concurring specially). I agree that it was error to submit to the jury in this case any question as to damage to respondent's reputation. That error, of course, requires a reversal. I am quite doubtful as to whether there is sufficient credible evidence in this record to justify the jury's finding that there was any unlawful restraint of respondent against her will, and therefore I limit my concurrence at this time to the first point above mentioned and to the result arrived at.