JOHN CARDILLO, PROSECUTOR, v. MAYOR AND COUNCIL OF THE BOROUGH OF BOUND BROOK, RESPONDENTS.

Submitted November 6, 1924—Decided February 26, 1925.

**Municipal Improvements—Streets—Numerous Objections to Passage of Ordinance, Including Protests of Taxpayers—Question of Requisite Number of Protestants—Question of Proper Advertising—Section of Statute Under Which Action was Proposed Referred to Local Improvements While the Contemplated Improvements Were General—Ordinance Set Aside.**

On *certiorari*.

Before Justices KALISCH, BLACK and CAMPBELL.

For the respondent, *Frank L. Cleary*.

For the prosecutor, *William F. Vosseller*.

PER CURIAM.

This writ brings up for review the proceedings relating to the adoption and passage of an ordinance of the borough of Bound Brook entitled "Ordinance No. 227, providing for the grading, paving, curbing and draining of Hamilton street from the northerly side of Main street to the southerly side of Union avenue, in the borough of Bound Brook, New Jersey, and providing for the issuance of temporary bonds to provide funds for said purpose."

The ordinance was introduced and passed on first reading, June 17th, 1924.

A notice giving the number and title of the ordinance; that it had been introduced at a regular meeting held June 17th, 1924; that the borough council intended to consider the same at a regular meeting to be held on July 1st, 1924, at eight o'clock P. M., in the American Hose House on East

Second street, when and where all persons interested could attend and have an opportunity to be heard, and that any person objecting thereto could then present their objections in writing or person, was given by the borough clerk, under date of June 17th, 1924, and seems to have been advertised in two newspapers.

At the meeting of July 1st, 1924, the clerk reported that a petition had been filed containing two hundred and fifty-four names, setting forth that the signers were property owners in the borough, and that they protested against the passage of the ordinance in the particular part wherein it provided for the payment of the work by general taxation.

At the meeting in question one of the objectors called attention to his previously having filed a petition containing eigthy-four names, objecting to the ordinance. At this meeting the ordinance was passed on its second and final reading, and seems to have been immediately approved by the mayor.

Another petition protesting against the ordinance containing the signatures of sixty-four residents and property owners was filed July 10th, 1924, and this fact was reported by the borough clerk at a meeting held July 15th.

The borough clerk testifies that he made no attempt to determine whether or not the petition of July 1st, containing two hundred and fifty names, contained the signatures of person owning ten per cent. of the amount of the assessed valuation of the borough as appeared by the last assessment roll, and that he did not file a certificate as to the sufficiency or insufficiency of this protest. That the protesting petition of July 10th did not alone contain the signatures of the requisite number in value of taxpayers, and that he made a certificate to that effect, and that he does not know whether or not the two petitions of July 1st and July 10th contained the names of the requisite number of protestants.

Four reasons for setting aside the ordinance are filed and urged, namely:

1. Because there were filed with the borough clerk protests, in writing, against the making of such improvements and

the incurring of such indebtedness, signed by taxpayers representing ten per centum in amount of the assessed valuation of such municipality, whose names appear on the last preceding roll thereof.

2. Because, between the introduction of said ordinance and its final passage, protests were filed with the borough clerk, signed by taxpayers representing ten per centum in amount of the assessed valuation of such municipality, whose names appear upon the last preceding roll thereof.

3. Because upon the filing of the protests aforesaid it became the duty of the mayor and council of the borough of Bound Brook not to proceed with said work until a proposition for the ratification thereof should be adopted at an election to be held for that purpose, being the majority of the qualified voters of such municipality voting on such proposition.

4. Because the clerk failed to file a certificate as to the sufficiency or insufficiency of the filing of the protest signed by the taxpayers.

5. Because the ordinance and its passage is in other respects illegal and void.

It is impossible for us to pass upon the questions raised by reasons 1, 2, 3 and 4, because there is nothing before us showing that the protests of July 1st, standing alone, on with that of July 10th, contained the signatures of the owners of the necessary assessed property value to make such protest legally effective.

The fifth reason, however, if it is sufficient, raises a question calling for a decision by us.

That ground for setting aside the ordinance is because it was not published in a newspaper circulating in the municipality at least two days prior to its final passage.

The reason is a general one. The rule seems to be that no error complained of will be considered by the court unless particularly raised by a specific objection, unless it be an error apparent on the face of the proceedings. *Griffith* v. *West,* 10 *N. J. L.* 352; *Rutherford* v. *McGinnis,* 72 *Id.* 444.

We think the question attempted to be raised under this reason is sufficiently apparent on the face of the proceedings to require consideration by us, as nowhere in the return or in the depositions is there the least intimation that there was any advertisement of the ordinance other than the notice of June 17th, fixing July 1st as the time for hearing objections thereto.

The amendment to the Home Rule act, "An act to amend an act entitled 'An act concerning municipalities,' approved March 27th, 1917," approved March 1st, 1918 (*Pamph. L.* 1918, *p.* 478, *ch.* 163, § 1, *art.* 10), provides: "No ordinance shall be finally passed unless it has been read in substantially its final form at a meeting held at least a week prior to its final passage, and shall have been published in a newspaper circulating in the municipality at least two days prior to its final passage; provided, such publication shall not be necessary in case notice of intention has been published under the provisions of section 9 of article 30 of this act. Such publication shall contain a notice stating the time and place, when and where the governing body will consider the final passage thereof. Before any ordinance shall take effect, such ordinance, or its title, shall be published at least once in a newspaper circulating in such municipality. It shall not be necessary to publish an ordinance otherwise than as required by this act."

Section 9, article 20 (*Pamph. L.* 1918, *p.* 478), referred to in the proviso contained in the foregoing section 1, article 10, is as follows:

"After the introduction of any ordinance authorizing any local improvement, public notice shall be given to all persons whose lands may be affected thereby, or who may be interested therein, of the intention of the governing body to consider the undertaking of such improvement. Such notice shall state the time and place, when and where such governing body shall consider the said ordinance, and shall briefly describe the proposed improvement. Such notice shall be published at least once in a newspaper circulating in the

municipality at least ten days prior to the date so fixed. At the time and place so specified in such notice, or at any time and place to which the meeting shall have been adjourned, all persons whose lands may be affected by such improvements, or who may be interested therein, shall be given an opportunity to be heard concerning such improvement. * * * Where the notice is published as required by this section, the publication of the ordinance before its final passage shall be unnecessary."

It will be noted that this section relates only to "any ordinance authorizing any *local improvement*."

Section 1, article 20 (*Pamph. L.* 1917, *p.* 319), defines a local improvement as follows:

"A local improvement is one the costs of which, or any portion thereof, may be assessed upon lands in the vicinity thereof benefited thereby."

The ordinance in question did not provide for a local improvement. All of its terms and provisions are to the contrary, and it provides for an improvement, the cost of which is to be borne by and at general public expense. In fact, that was the ground of protest made through the written petitions, and verbally expressed by objectors to the governing body.

The provisions of section 1, article 10 of *Pamph. L.* 1918, *p.* 478, *ch.* 163, *supra,* not having been complied with, the ordinance in question is set aside, with costs.