[No. 2865.    March 17, 1925]

## STATE v. BURKETT.

### SYLLABUS BY THE COURT

1.    The jury commission having been ordered to place 150 names in the box, the minimum under section 8, chapter 93, Laws of 1917, included 4 persons disqualified under section 19, having served as jurors within 12 months.    On challenge to the array, it was shown that the commission in selecting the names, had a list of male voters as required by section 1, chapter 3, Laws of 1921, and also a list of those who had served within 12 months, including the 4 in question, and that the names, as called from the former list, were checked on the latter.    **Held,** that the challenge was properly overruled, the evidence not showing that the 4 in question were known to the jury commission to be disqualified.

2. An opinion, not clearly shown to be based on more than mere rumor, does not disqualify a juror if he unequivocally states that he can lay it aside and commence the trial with his mind unprejudiced.

3. It is within the discretion of the trial court to impose a reasonable limit on the number of witnesses to the good reputation of the accused. Where the accused sought to establish a good reputation, both in New Mexico and in Texas, it was not an' abuse o? discretion to limit the number of witnesses to 7; the court having anounced the limit after the third of such witnesses had testified.

4. If the jury is otherwise correctly instructed as to the effect of evidence of the good character of the accused, it is not error to refuse to instruct that such evidence is sometimes sufficient to create a reasonable doubt as to the guilt of the defendant, when otherwise none would exist.

5. The jury as a whole having been correctly instructed as. to reasonable doubt, instructions properly refused which were calculated to impress on each juror his duty in this respect without regard to the conclusions reached by the others. State v. Corral, 27 N. M. 535, 203 P. 533, followed.

6. The jury having been correctly instructed on unlawful homicide and on self-defense, it is not error to re'use to instruct that, if the elements of self-defense are found present a design to kill, entertained prior to firing the fatal shot, would not be unlawful, nor to refuse to instruct that, even though one have express malice, he is not guilty if he acts in self-defense.

7. No error in refusal of instructions sufficiently covered by general charge.

8. A tendered instruction properly refused, to the effect that one whose life has been threatened, or against whom threats of serious bodily harm have been made, may lawfully arm himself for defensive purposes; the tendered instruction omitting the essential element of reasonable apprehension' aroused by such threats.

9. Where by the instructions given the right of self-defense is limited by submission of the issue of provocation of difficulty, there being evidence of communicated threats and that the accused armed himself because of. such threats. in anticipation of attack, and solely for self-defense, it is error to refuse to instruct that one having reasonable grounds to anticipate an unlawful attack endangering life or limb has a right to arm himself for the purpose of resisting such attack.

Appeal from District Court, De Baca County; Bratton, Judge.

Harvey Burkett was convicted of murder in the second degree, and he appeals. Reversed and remanded for new trial.

Keith W. Edwards, of Ft. Sumner, and Hall & McGee, of Clovis, for appellant.

Milton J. Helmick, Atty. Gen., and J. W. Armstrong, Asst. Atty. Gen., for the State.

OPINION OF THE COURT

WATSON, J. For the killing of Ora Hall on February 6, 1922, appellant was convicted of murder in the second degree and received a sentence of from 40 to 50 years in the penitentiary.

The homicide occurred at a point some four or five miles west of Ricardo in De Baca county where the highway crosses the railroad right of way. The first news of the homicide was furnished by the appellant, who reported at Ricardo that he had had trouble with the deceased and had killed him. The body was found on the railroad right of way, lying on its face, almost parallel with the right of way fence, with the feet near the gatepost. Near the body was found a two-bladed pocketknife with the smaller blade open. On both hands were leather mittens with latchets fastened. The fatal wound was from a bullet entering in the center of the breast, about two inches below the collar bone. Its course was downward about 30 degrees, it severed the ascending aorta, and found exit on the right shoulder blade. Another bullet wound was found entering the outside of the left arm near the elbow and passing out lower down on the other side. If the left arm of the deceased had been held across his breast, both wounds might have resulted from the same shot.

Appellant and deceased had met in Ricardo on the day in question, appellant leaving first. Deceased was seen to overtake him a little west of Ricardo, and they then rode along together; both being on horseback. They were later seen riding together in apparent amity.

There was evidence showing the deceased had made threats against appellant, some of which were communicated, from which, if believed, appellant might reasonably have apprehended danger to his life or great

bodily harm. He testified that because of these threats, and fearing that the deceased might attempt to carry them out, and just for his protection, he armed himself with the pistol with which he killed the deceased, and that he went to Ricardo not knowing that he would meet the deceased.

The substance of appellant's testimony touching the facts immediately surrounding the homicide is as follows: After the deceased had joined him, they rode together for two or three miles, conversing generally, when deceased broached the subject of appellant's fences being torn down; admitted that it was he who had done it; that he was paid to do it, and was going to do it; that money was what he was after, and he was going to have it. Appellant asked him to lay off and not bother his fences any more. At this point in the conversation they arrived at the crossing where deceased dismounted and opened the gate, and appellant rode through ahead. Appellant then dismounted to urinate, his horse being between him and the deceased. The horse swung around somewhat, and appellant saw the deceased coming toward him with an open knife in his hand, exclaiming, "Here is where I get you." Appellant called on deceased to stop. Deceased continued to advance, and appellant fired two shots, upon which deceased staggered a few steps and fell. Appellant fired the shots because he believed his life was in danger.

[1] 1. Appellant's first ground for reversal is the overruling of his challenge to the array of the petit jury.

It appears that the court ordered 150 names placed in the box, the minimum prescribed by section 8, chapter 93, Laws of 1917. The jury commissioners listed and placed in the box 150 names, but 2 of these names were shown to represent the same person, and 4 of the persons listed were shown to have served as jurors within the preceding 12 months. The list, therefore, represented but 149 actual and 145 qualified persons. At a hearing upon the challenge these facts were shown

and, further, that the jury commission in making up its list had before it a list of male voters of the county furnished by the clerk pursuant to section 1, chapter 3, Laws of 1921, and a list of persons who had served as jurors within the preceding 12 months, including the four in question, and that as the names of the voters were called from the first mentioned list they were checked with the latter.

By section 9, chapter 93, Laws of 1917, it is provided that the commission ''shall not knowingly place upon the list selected by them, the name of any person who is not believed by them to be qualified and liable for jury service.'' By section 19 of the same chapter, it is provided:

"The name of no person shall be placed upon any of the lists provided to be selected by the jury commission as jurors whose name has been drawn from the jury box and who actually served as a juror on the regular panel. or in case of a talesman who actually served in the trial of a case, in the court during the preceding twelve months, nor shall the name of any such person be placed upon any venire, if drawn from the box."

Appellant's contention is stated as follows:

"It is our belief that the statute we have is mandatory in that the jury commission shall not select the names of persons, known to them to be disqualified, and that in the present case, with the list furnished them by the clerk as by law provided, their knowledge of the disqualification of Miller, Ragland, Boweton, and Harrington cannot be denied."

The facts above stated, upon which appellant bases his conclusion that the names of the 4 disqualified persons were knowingly included in the list and placed in the box, are not, in our opinion, sufficient to overcome the well-established presumption of faithful performance of official duty. The challenge was therefore properly overruled.

[2] 2. Appellant complains of the overruling of his challenge for cause directed at a juror who, on his voir dire, stated that from what he had heard about the

case he had formed and then had an opinion which it will take some sworn evidence to remove. It was not shown that the juror ·had ever expressed an opinion. On examination by the court, he stated, unequivocally, that he could and would set that opinion aside at the beginning of the trial and go into the trial with his mind unprejudiced as between the state and the defendant. Under former decisions of this court, an opinion based on rumor or newspaper accounts does not disqualify a juror if he states that he will lay it aside and decide the case on the law and the evidence. Territory v. Emelio, 14 N. M. 147, 89 P. 239; State v. Rodriguez, 23 N. M. 156, 167 P. 426, L. R. A. 1918A, 1016; State v. Anderson, 24 N. M. 360, 174 P. 215. It is not overlooked that the juror, by some of his answers, indicated that his .opinion might be based in part upon statements made by some person claiming to have knowledge of the facts. A reading of the whole examination leaves us in doubt on this point, so that we cannot say that anything more than rumor had reached him. We therefore find no error in the overruling of the challenge.

[**3**] 3. Appellant had lived at Ricardo about two years, prior to which he had resided for many years in Dawson county, Tex. He sought to establish a good reputation as a peaceable, quiet, and law-abiding citizen in both communities. After seven witnesses had so testified, three as to his reputation in Texas, and four as to his reputation in New Mexico, the state· objected to further tendered evidence to the same effect. The court sustained the objection, remarking:

"The rule of this court has always been and now is that seven character witnesses concerning the good reputation of a defendant in a homicide case and five character witnesses in other kinds of criminal cases is the limit which a defendant may use, and at the time the third character witness, Tom Bradford, was called, the court called counsel's attention to this rule, and believing that the number of character witness is within the discretion of the court and that seven is a proper number and that such proper number should be limited to seven witnesses, I deny the defendant the right to use further character witnesses, inasmuc'n

as seven have already been used and have testified to the *good reputation of the defendant.*"

And further stating, an answer to counsel's objection that he knew of no rule to the effect stated:

"Concerning the question of rules, there has never been any printed rules of this court since statehood, so far as I know. There is no printed rule of any kind in the records of this court, but the rule of seven has been uniform and uniformly followed during the last 3½ years in the courts over which I have presided."

The rule, by weight of authority, seems to be that the trial court may, in its discretion, impose a reasonable limit to the number of witnesses who may testify to the reputation of the accused. 4 Wig. on Ev. (2d Ed.) § 1908; 38 Cyc. p. 1345; People v. Arnold, 248 Ill. 169, 93 N. E. 786; State v. Albanes, 109 Me. 199, 83 A. 548; People v. Nemer, 218 Mich. 163, 187 N. W. 315; State v. Rutherford, 152 Mo. 124, 53 S. W. 417.

Matters of discretion are, according to the familiar rule, reviewable only for abuse. No abuse of discretion appears in this case, and this assignment must be overrulled.

[4] 4. Error is assigned upon the court's instruction No. 17, and also upon the refusal of tendered instruction No. 24; the two assignments being argued together. The court's instruction No. 17 is as follows:

"Evidence has been introduced in this case by which it was sought to prove that the defendant, prior to the time of the alleged commission of the crime with which he stands charged, bore a good reputation in the community in which he lives with respect to being a quiet and peaceable and law-abiding citizen. The law presumes that a person of good character is less likely to commit a crime such as is charged in the indictment in this case than one who is not of such good character, and you shall consider such evidence in connection with all the other evidence in the case, tending to prove or disprove the guilt or innocence of the defendant; but after considering all the evidence in the case, including that touching upon the good character of the defendant, you find and believe beyond a reasonable doubt that he is guilty

of the crime charged in the indictment, you should not acquit him solely upon the ground of such good character."

Appellant requested the giving of his instruction No. 24, as follows:

"You are instructed that the defendant has introduced evidence before you tending to prove that prior to the homicide in question he was a man of good character for being peaceable, quiet, and law-abiding. You are instructed that this is competent evidence and should be considered by the jury in arriving at their verdict in this case in connection with all the other evidence in the case, for the law presumes that a person of good character in this respect is less likely to commit the crime charged than one whose character in this respect is not good, and that the evidence of such good character is sometimes sufficient to create a reasonable doubt as to the guilt of the defendant where otherwise none would exist; but if, after a fair and impartial consideration of all the testimony in the case, including that touching his good character, you are satisfied beyond a reasonable doubt of the guilt of the defendant, you should not acquit him solely on account of such good character."

In the main, the questions here raised were passed upon adversely to appellant's contentions in State v. McKnight, 21 N. M. 40, 153 P. 76. However, the assignments here considered seem to raise one question meriting attention not settled in the McKnight Case, namely, whether appellant, on proper request, was entitled to an instruction to the effect that evidence of good character "is sometimes sufficient to create a reasonable doubt as to the guilt of the defendant, when otherwise none would exist." Both appellant and the state have cited numerous authorities upon the question here involved, referring to which we find a great variety of judicial opinion. In State v. Brown, 39 Utah, 140, 115 P. 994, Ann. Cas. 1918E, 1, is found an exhaustive review of the authorities up to 1911, to which we refer. In that case, the opinion rendered by Mr. Justice Straup supports appellant's contention herein, while that written by Mr. Justice McCarty is to the contrary. We are persuaded that the conclusion reached by the latter is better in reason and policy, and that it is supported by the weight of authority. See, also, Randall's Instructions to juries, § 240; Thompson on Trials, § 2444.

Under the instructions given, the jury was told that evidence of good character is to be considered in connection with all the other evidence in the case tending to prove or disprove the guilt or innocence of the defendant. Such an instruction necessarily contemplates the possibility of a case in which the proof, or lack of proof, of good character may be the determining factor in deciding the question of reasonable doubt. Had the court charged as requested, he would have stated expressly what is necessarily implied from what he did say. Without comment on the weight of the evidence, the court could not indicate an opinion as to whether the particular case was one which such proof of good character should turn the scales. It must always then be presented to the jury in the abstract. The correct principle being found in the instruction, we do not deem it error to refuse an instruction differing from it only in point of emphasis.

[5] 5. Complaint is made of the refusal of the court to give requested instructions Nos. 3, 4, and 16. The purpose and substance of these requested instructions was to impress upon each individual juror the duty of adhering to his own opinion until and unless convinced of appellant's guilt beyond a reasonable doubt, and that he should not be influenced to vote for conviction for the single reason that the majority of the jury might favor conviction, and to warn that any juror, not convinced of the guilt of the accused beyond a reasonable doubt, should he vote for a conviction, would be perpetrating a grievous wrong upon the defendant and would be violating his oath as a juror. The court gave the stock instruction on reasonable doubt, which is set forth in State v. Perkins, 21 N. M. 135, 163 P. 258. The assignments are overrulled on the authority of State v. Corral, 27 N. M. 535, 203 P. 533.

[6] 6. Error is assigned upon the refusal to give this requested instruction:

"You are now instructed that if the elements of self-defense as heretofore outlined to you, existed, then a design to kill formed and entertained by the defendant prior to the firing of the fatal shot, would not be unlawful."

It is urged that the jury should have been expressly instructed that, even though the fatal shot was fired with a design to kill, such homicidal intent was not unlawful, if the elements of self-defense existed justifying the act. The jury having been, as it was in this case, correctly instructed in definition of unlawful homicide, and of justifiable homicide, it would seem absurd further to charge that if the jury found the homicide to be justifiable, they should not find it unlawful. We have examined Bohannon v. Commonwealth, 8 Bush (Ky). 481, 8 Am. Rep. 474, relied on by appellant, and do not think it supports his present contention. For the same reason, we overrule the assignment upon the refusal to give requested instruction No. 34, as follows:

"You are instructed that even though a person have express malice against one whom he kills, yet he is not guilty if he acted in self-defense, for previous ill will or malice cannot take away the right of one to· act in self-defense."

[7] 7. Appellant's propositions 14, 16, and 19 - relate to the refusal of requested instructions, all of which we find properly refused because substantially covered by the instructions as given. State v. Todd, 28 N. M. 518, 214 P. 899.

[8] 8. Complaint is made of the refusal of tendered instruction No. 32, included wherein was this:

"A man whose life has been threatened, or against whom threats of serious bodily harm have been made, may lawfully arm himself for defensive purposes."

This assignment is overruled on the authority of State v. Moss, 24 N. M. 59, 172 P. 199.

[9] 9. The court refused the following instruction, No. 35:

"You are instructed that one who has reasonable grounds to believe that another will unlawfully attack him, and that

the anticipated attack will be of such a character as to endanger his life or limb, or to cause him serious bodily harm, has a right to arm himself for the purpose of resisting such attack."

Appellant appears thus to have tendered to the court a correct proposition of law. 30 C. J. p. 50; Wharton on Homicide (3d Ed.) pp. 452, 518; 3 Randall's Instructions to Juries, § 2983. There was evidence of threats from which appellant might reasonably have feared an attack dangerous to life or limb, and, further, that in anticipation of such attack he had armed himself for his defense. We thus have a case for the application of this principle of law. The question is whether the court erred in refusing to apply it when requested. In Michie on Homicide, pp. 1553, 1554, it is said:

"The law of self-defense, when invoked by the proof, should be given to the jury, plainly, directly, connectedly, affirmatively, and in such manner as to show its application to the facts in evidence. The charge should apply the law announced to the phase of the case which it is intended to present, and mere abstract propositions, however clear, are insufficient where the jury are left to make their own application of such propositions and to give to them such consequences as they may deem them to possess."

This is merely applying to self-defense the general and well-established rule that the defendant has the right to have his theory of the case clearly and fairly laid before the jury. This rule was referred to by this court in State v. Todd, 28 N. M. 518, 214 P. 899.

The court, by instructions 14 and 15, as given, charged the jury in the identical language of instructions 17 and 18, as set forth in the case of State v. Todd, 28 N. M. 518, 214 P. 899, but added thereto the following:

"In this connection, the law does not require a person who is actually assaulted to wait until such assault has reached the stage where resistance would be useless, but permits such person who is so assaulted to act and use force in his self defense, when he, as a reasonable man, in good faith, believes and has reason to believe that he is in imminent danger of losing his life or receiving great bodily harm at the hands of the assailant. Further in this connection, the state must

prove to your satisfaction and beyond a reasonable doubt that the defendant shot and killed the deceased without excuse or justification and not in self-defense,"

These instructions are abstract. They fail to apply the law to the particular facts in the case, especially to appellant's theory of them. The outstanding fact that appellant had armed himself in anticipation of an encounter with the deceased is completely ignored.

It is laid down in 30 C. J. p. 379:

"Where the court restricts the issue of self-defense by submitting the issue of provoking the difficulty, it should also instruct the jury as to defendant's right to arm himself in anticipation of danger, and, where such an instruction is warranted by the evidence, a refusal to give it constitutes error. Such an instruction, however, is neither necessary nor proper where such an issue is not raised by the evidence in the case, as where the evidence shows that, although he was carrying a weapon at the time, he was doing so merely as was his usual custom, and not in anticipation of danger from deceased; nor is such an instruction required where the court instructs as to self-defense without any limitation as to provoking the difficulty."

Examining the numerous Texas decisions cited to this section, we find the distinction very clearly drawn between cases wherein the instructions gave the defendant the perfect right of self-defense, and those in which such right was abridged or limited by the instructions by submitting the issue of provoking the difficulty. In the former class of cases it is not necessary to instruct as to the right of the defendant to arm himself in anticipation of attack. Smith v. State, 81 Tex. Cr. 368, 195 S. W. 595. But otherwise in the latter class of cases. Brown v. State, 85 Tex. Cr. 493, 213 S. W. 658.

In the case at bar we think that, while there was no special charge on provocation of the difficulty, the instructions as a whole must be taken as a submission of that question. The court correctly charged as an abstract proposition:

"The law of self-defense does not imply the right of attack, nor will it permit acts to be done in retaliation or for revenge."

Again, the jury was instructed:

"If a person is assailed, being himself without fault, and at a place where he has a right to be, and for a lawful purpose, and has reason to apprehend great harm to himself unless he kills his assailant, the killing is excusable."

The jury was also instructed that the evidence of uncommunicated threats should be considered as bearing upon the state of mind of the deceased, as throwing light upon the question as to which party was the aggressor, and that uncommunicated threats should be considered as bearing upon the state of mind of both parties in determining whether the defendant reasonably apprehended danger, and whether the deceased was actually the aggressor. Thus the minds of the jurors were directed, or at least invited to consider which of the parties provoked the fatal encounter, and whether the killing was for retaliation or revenge, or in self-defense. The fact that the defendant was at the time armed with a deadly weapon which, as he claimed, he had with him for his defense, and in anticipation of the attack, could not fail to impress an intelligent juror as having an important bearing upon these questions. Yet the jury was left in the dark regarding the right of the defendant to arm himself under such circumstances. The refused instruction is not a comment on the weight of the evidence. It does not single out some feature of the case and give it undue prominence. It relates to a substantial legal right of an accused person invoking the law of self-defense. The fact that defendant was armed was before the jury undisputed. They were at liberty to believe or disbelieve defendant's testimony that he armed himself for defense only. They were not at liberty to disbelieve that he had a right to arm himself for that purpose. That was a matter of law upon which they should have had instructions from the court. In this we find error.

All other assignments to which appellant had directed argument in his brief have been considered, and are deemed either without merit or to involve questions not likely to arise on another trial of this case.

For the error pointed out, the judgment will be reversed, and the cause remanded for new trial; and it is so ordered.

PARKER, C. J., and BICKLEY, J., concur.