HOWARD JOHNSON, PROSECUTOR-APPELLANT, v. THE
CITY OF WILDWOOD, NEW JERSEY, MAYOR DORIS W.
BRADWAY, COMMISSIONERS FREDERICK McMURRAY
AND ROLAND CORSON AND CITY CLERK GUS HEIL,
ALL OFFICIALS OF THE CITY OF WILDWOOD, NEW
JERSEY, DEFENDANTS-RESPONDENTS.

Submitted February 14, 1936—Decided April 30, 1936.

For the appellant, *Bleakly, Stockwell & Burling.*

For the respondents, *William George.*

The opinion of the court was delivered by

PERSKIE, J. This appeal brings up for review a judgment
of the Supreme Court dismissing prosecutor's writ of *cer-
tiorari* by which he challenged and caused to be reviewed his
dismissal as a police officer of the police force of the city of
Wildwood. 13 *N. J. Mis. R.* 503; 180 *Atl. Rep.* 232 (1935).

We are met, *in limine,* with these prefatory remarks by the
court:

"We think it safe to say that if the filed reasons had stated
certain grounds appearing plainly on the record   *   *   *

this court would have little difficulty in setting aside the conviction and dismissal. The trial was disorderly throughout, as the transcript of the testimony plainly shows. Fundamentally, the specifications seem insufficient, as they allege without assigning any date, that prosecutor observed the presence of certain slot machines at specified places and willfully failed and neglected to report them; and when questioned why he had so omitted to report, said that they were on another man's beat; also that he did 'willfully make false and untrue statements to "the chief of police," ' &c. The trial was in 1934, and it appeared that the dereliction if any, was in 1932, when the chief of police who signed the complaint was not in office as such. But no objection was made to the charge and specification. What is before us is the transcript of a sort of go-as-you-please trial, with no substantial legal point now argued; based on anything raised below."

Was the court below right in refusing to set aside the conviction and dismissal? We think not. We do not, it is true, consider any question not properly raised and argued below unless it goes to jurisdiction, or involves public policy (*Dickinson* v. *Inhabitants of the City of Plainfield* (No. 22, October term, 1935, Court of Errors and Appeals), or relates to an error which is apparent on the face of the record. *Griffith* v. *West*, 10 *N. J. L.* 350; *Treasurer of Plainfield* v. *Marcellus*, 68 *Id.* 201; *Rutherford* v. *Meginnis*, 72 *Id.* 444; 60 *Atl. Rep.* 1125; *Cardillo* v. *Bound Brook*, 3 *N. J. Mis. R.* 249; 127 *Atl. Rep.* 792. Thus where the error appears on the face of the record, it has been held that a general reason alleging the unlawfulness of the conviction, as is alleged in the case at bar, in the ninth reason, otherwise insufficient, because of its vagueness, is sufficient. *Treasurer of Plainfield* v. *Marcellus, supra.*

In addition, however, to that which has been written, we are of the further opinion that the prosecutor was not, as claimed for him under the second reason, given a fair trial. For many years our legislature, in pursuance of a sound public policy, has given to certain public servants and officials tenure of office. Wisely protecting and safeguarding that

tenure, no policeman may be removed for political reasons or for any other cause than those specifically enumerated in the applicable act; it is the declared intent of that act that every person against whom a charge or charges be preferred be given a fair trial upon said charge and charges, and every reasonable opportunity to make his defense, if any, he has or chooses to make. (Article XVI (Police) paragraphs 3 and 5 (Home Rule act, *Pamph. L.* 1917, *p.* 319, as amended). *Merry & Eckman* (2d ed., 1930) 128-135.)

Thus we approach the consideration of the question: What is a fair trial? It is a term not uniformly or easily described. But, let there be an unfair trial then every normal person, possessed of average or ordinary ability to distinguish between right and wrong, immediately senses the fact. The term "fair trial" has been variously defined. A fair trial is a legal trial; one conducted according to rules of common law except in so far as it has been changed by statute; one where the accused legal rights are safeguarded and respected. See cases collated in *Words and Phrases* (third series) 511, 512. In our own state, in *Eisberg* v. *Mayor and Council of Borough of Cliffside Park* (*Supreme Court,* 1919), 92 *N. J. L.* 321, 322; 105 *Atl. Rep.* 716, Mr. Justice Minturn for the court said:

"* * * A fair trial in the generic language of Mr. Webster in the *Dartmouth College Case,* 4 *Wheat.* 518, 581, is a proceeding 'which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial.' Specifically, it is held to be that a hearing shall be accorded to the alleged delinquent by an impartial and disinterested tribunal. 2 *Abb. Mun. Corp.* 1663; *Pinkermann* v. *Rusling,* 64 *Conn.* 517; *Streeter* v. *Worcester,* 177 *Mass.* 29."

Compare *Ramsey* v. *Rahway,* 1 *N. J. Mis. R.* 332, 333; *Kelly* v. *Bishop,* 45 *N. J. L. J.* 322.

We are not unmindful of the fact that a proceeding for the removal of a police officer is not governed by the strict rules applicable to proceedings upon an indictment, or in law or equity causes, but it does mean a trial which insures the administration of "substantial justice" otherwise the legisla-

tive interdiction "that [prosecutor] be given *a fair trial* is rendered nugatory." See *Ayers* v. *Newark*, 49 *N. J. L.* 170; 6 *Atl. Rep.* 659; *Capone* v. *Union County Park Commission*, 9 *N. J. Mis. R.* 1105; 156 *Atl. Rep.* 782; *McCran* v. *Gaul*, 95 *N. J. L.* 393, 402; 112 *Atl. Rep.* 341; *affirmed*, 96 *N. J. L.* 165; 112 *Atl. Rep.* 603.

Let us look to the proofs as to whether prosecutor was given a fair trial. Counsel for the city was permitted, over objection, to examine prosecutor about many matters entirely outside of the charge and specifications. Among these, he examined him on the activities of his father, who, together with other citizens of Wildwood, sought to, and did in fact, effect an investigation of the affairs of the city of which Mrs. Doris W. Bradway is mayor and in charge of the police department. It is interesting to note that the alleged relevancy of this examination was rested on the statement of counsel for the city, and even this without a scintilla of evidence to support it, that because prosecutor "lived with and contributed towards the support of his father he could not, therefore, be loyal to the administration and the taxpayers." But be that as it may, the proofs are uncontradicted that prosecutor, because of his father's action, was summarily dismissed from the police force by the mayor and when he was reinstated was told by her that she had "become riled" before dismissing him.

Thereafter, although prosecutor had been commended four times for his services while a patrolman, by his superior, Chief Cobb, and had never lied to this superior, the charges, under the circumstances stated, were preferred by the chief against him.

The trial, as pointed out by the court below, was not only *"disorderly throughout"* and a sort of *"go-as-you-please trial"* but it was nothing less than a disgraceful pretense of going through the motions of a trial. Not only was resort had to stale acts of alleged derelictions but prosecutor and his witnesses were examined on matters entirely foreign to the issue, and both they and their testimony were characterized in most uncomplimentary terms. Every objection, irrespective of its validity, made by counsel for the prosecutor, was promptly

overruled; and every objection, valid or otherwise, made by counsel for the city was promptly sustained. And when counsel for the prosecutor refused to consent to a blanket objection to all questions that counsel for the city might ask (without even stating the nature of the questions) he was told to *"object to his heart's content,"* and when he did try to intervene, without objection, on prosecutor's cross-examination, he was told, "then for Heaven's sake keep quiet." And upon being told the same thing when he objected to counsel for the city examining prosecutor as to some reported statement by him in a newspaper, the following colloquy ensued:

"Mr. Goetz—I object to that line of questioning, Mrs. Mayor, as absolutely outside the grounds of this man's charge that he is being heard on to-day, and I ask Mr. George and the mayor not to bring political matters into why a patrolman is suspended.

"The Director—*We* are not. *We are reading from the record of Mr. Hunt's newspaper.*

"Mr. Goetz—What has Mr. Hunt's newspaper got to do with the trial of Mr. Johnson for failing to report a slot machine?

"The Director—*Plenty, only perhaps you don't know it."*

Much more proof of similar character, and circumstances equally objectionable could be cited. It is impossible, however, without reading the entire record, to get a true picture of this alleged fair trial accorded prosecutor. We cannot escape the compelling conclusion that the mayor was not concerned with the question of giving prosecutor *"a fair trial"* or "of administering *substantial justice."* She was determined to and did accomplish, by this purported trial, that which she had to undo because done when she was admittedly "riled."

We are not now concerned with such questions as to whether the alleged dereliction, if any, is supported by the weight of the evidence, or whether there is sufficient legal proof to form a rational basis for the challenged judgment. For, it seems to us that it would be a travesty on justice to hold that prosecutor was given a fair trial within the provisions of law and our decisions.

Judgment is reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, LLOYD, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ. 10.