536 P.2d 280

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Guy B. MYERS, Defendant-Appellant.**

**No. 1545.**

Court of Appeals of New Mexico.
May 7, 1975.

**18**

Raymond W. Schowers, Horn, Schowers & Ginsburg, Albuquerque, for defendant-appellant.

Toney Anaya, Atty. Gen., Santa Fe, Jay F. Rosenthal, Asst. Atty. Gen., for plaintiff-appellee.

## OPINION

LOPEZ, Judge.

Late in the evening of November 23, 1973, at approximately 11:00 p. m., Cheryl Lynn Hosier, the two-year-old child of Howard Bruce Hosier, was a passenger in the front seat of a car being driven by her father. Mr. Hosier was driving a 1968 Buick and was traveling east on Montgomery Boulevard in Albuquerque. The defendant was, at the same time, driving a 1967 Oldsmobile northbound on Wyoming Boulevard. The evidence is undisputed that the defendant ran a red light at the intersection of Montgomery and Wyoming and hit the Hosier vehicle on the passenger side. As a result of this impact, Cheryl Lynn Hosier was thrown from her vehicle and killed.

Defendant was convicted by jury of homicide by vehicle pursuant to § 64–22–1, N.M.S.A. 1953 (2d Repl.Vol. 9, pt. 2). This section defines homicide by vehicle as "the killing of a human being in the unlawful operation of a motor vehicle." The acts of unlawful operation relied upon by the state to support the conviction were: (1) driving under the influence of intoxicating liquor or drugs [a separate violation under § 64–22–2, N.M.S.A.1953 (2d Rep.Vol. 9, pt. 2)] and (2) reckless driving [also a separate violation under § 64–22–3, N.M.S.A. 1953 (2d Repl.Vol. 9, pt. 2)].

Defendant argues five points for reversal: (1) substantiality of the evidence; (2) violation of defendant's right by procedures followed in testing his blood; (3) court error in refusing certain of defendant's tendered jury instructions; (4) failure of the state to lay a proper foundation for the introduction of evidence relating to defendant's blood alcohol content; and (5) failure of the state to lay a proper foundation for the introduction of evidence involving a "breathalizer" test.

(1) *Substantiality of the evidence*

Defendant asserts the evidence is insufficient as to three items: (a) the evidence of driving while under the influence of intoxicating liquor; (b) evidence of reckless driving; and (c) evidence of criminal intent. We disagree.

(a) Section 64–22–2, supra, states in part:

> "It is unlawful for any person who is under the influence of an intoxicating liquor to drive or be in actual physical control of any vehicle within this state."

Three different types of tests were conducted following defendant's arrest to determine his degree of intoxication. The various tests revealed .05%, .10% and .12% alcohol in the defendant's blood. These tests were made shortly after the defendant's arrest.

The term "under the influence" has been interpreted to mean " * * * that to the slightest degree defendant was less able, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle an automobile with safety to himself and the public." State v. Dutchover, 85 N.M. 72, 509 P.2d 264 (Ct.App.1973).

Section 64–22–2.10, N.M.S.A. 1953 (2d Repl.Vol. 9) reads in part:

> "If the blood of the person tested contains:
>
> " * * *
>
> "(3) one-tenth of one per cent [.10%] or more by weight of alcohol, it shall be presumed that the person was under the influence of intoxicating liquor."

This language has been interpreted to mean that such a test result is prima facie proof, sufficient to go to the jury, that defendant was under the influence of intoxicating liquor. State v. Trujillo, 85 N.M. 208, 510 P.2d 1079 (Ct.App.1973). This case further notes that the evidence giving rise to the presumption is to be considered with other evidence in the case on the question of being under the influence and the presumption may be rebutted by such other evidence. 85 N.M. 208, 213, 510 P.2d 1079.

There was sufficient evidence for a jury to determine as a matter of fact that the defendant was so intoxicated as to be under the influence of alcohol, and thereby guilty of violating § 64–22–2, supra.

(b) Section 64–22–3, supra, states in part:

> "Any person who drives any vehicle carelessly and heedlessly in willful or wanton disregard of the rights or safety of others and without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property is guilty of reckless driving."

The record shows that defendant was not driving at excessive speed for the area; nor was the defendant's vehicle shown to be operating oddly. We do not depart from reasoning in State v. Harris, 41 N.M. 426, 70 P.2d 757 (1937), to the effect that a death caused by mere negligence, not amounting to a reckless, willful and wanton disregard of consequences to others, lays no foundation for criminal prosecution.

Nevertheless, this court reviews evidence in a conviction for homicide by vehicle in the light most favorable to the verdict. State v. Trujillo, supra; State v. Dutchover, supra. We will not attempt to substitute our view of the facts for that of the jury. And while we agree that the mere running of a red light would not, alone, constitute reckless driving, the circumstances of intoxication attending this act might reasonably lead a jury to a finding of recklessness. There is substantial evidence on the record to indicate that the defendant was either intoxicated or under the influence of alcohol at the time of the accident.

As was stated in State v. Sisneros, 42 N.M. 500, 507–8, 82 P.2d 274, 278 (1938), the act of a person who drives an automobile on the highway in an intoxicat-

ed condition "may be such willful, wanton and criminal negligence and disregard for the safety and lives of others, as that a jury would be warranted in finding him guilty of manslaughter if his operation of the automobile while intoxicated is the proximate cause of the death of another."

█ There is evidence that defendant, while driving "under the influence," caused an accident; that Cheryl Lynn suffered injuries in the accident; and that Cheryl Lynn died from those injuries. This is substantial evidence of proximate cause. State v. Dutchover, supra.

There is substantial evidence, therefore, of reckless driving.

(c) Defendant next argues that he lacked the requisite criminal intent. " * * * [C]riminal intent, *a mental state of conscious wrongdoing,* is a necessary element of [homicide by vehicle] and one which must be proven." State v. Jordan, 83 N.M. 571, 494 P.2d 984 (Ct.App. 1972). There is really no conflict since the jury was adequately instructed on the element of criminal intent:

"* * * Voluntarily driving a vehicle while under the influence is an act malum in se and this action is substantial evidence of criminal intent." State v. Dutchover, supra.

Since the jury could have found, under part (a), supra, that the defendant was driving while under the influence, it is also possible for the jury to have concluded that defendant possessed the requisite intent to commit homicide by vehicle.

### (2) *Blood testing procedures*

Defendant contends that the procedures followed in the extracting of his blood violated his rights as guaranteed (a) by statute and (b) by state and federal constitutions.

(a) Section 64–22–2.9(B), N.M.S.A. 1953 (2d Repl.Vol. 9, pt. 2), states:

"B. The person tested shall be given an opportunity to arrange for a physician, licensed professional or practical nurse, or laboratory technician or technologist who is employed by a hospital or physician, of his own choosing to perform a chemical test in addition to any test performed at the direction of a law enforcement officer."

Defendant argues that this section entitles him, first of all, to have a test made, by a person of his choice, using the same sample extracted from his body. Defendant further claims that a denial of this opportunity, for whatever reason, renders the state's results inadmissible. It should be noted at this point that the sample was exhausted by the state in the conduct of its tests, so that no part of it remained for the defendant to test.

█ The court will not adopt a construction of a statute which will lead to unreasonable results. State v. Trujillo, supra. The record shows neither intent on the part of the state to destroy evidence nor any negligence by the state since all the blood was used in the tests conducted. The statute cannot insulate defendant "against the 'slings and arrows of outrageous fortune', which may strike anyone at any time and are unfortunately incidental to life itself." United States v. Pate, 318 F.2d 559 (7th Cir. 1963); Nunn v. Cupp, 15 Or.App. 212, 515 P.2d 421 (1973).

█ We conclude that the results of the state's tests were admissible regardless of the fact that defendant had no opportunity to test the same sample.

(b) The second, and more serious, argument under Point 2, concerns the constitutional application of the phrase "shall be given" as it appears in § 64–22–2.9(B), supra. This language is mandatory on its face. Defendant would have us read this to say that the arresting officer or other administrator of the proposed blood test must warn defendant of his right to have additional tests performed by any qualified person of his choosing. The state argues that a person is presumed to know the law and has no right to such a warning. Compare Miranda v. Arizona, 384 U.S. 436, 86

S.Ct. 1602, 16 L.Ed.2d 694, (1966). Neither position seems entirely accurate in this situation.

The record shows that the defendant was given no warning concerning the consequences of refusing a blood test. The statute does not expressly require that such warnings be given. On the other hand, the practice in New Mexico since the time of defendant's arrest appears, again from the record, to be to give such a warning.

New Mexico's statute does not expressly instruct the police or the test administrator to warn the suspect. There is no overriding constitutional requirement that it must be so construed. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, (1966). Further, New Mexico follows that line of reasoning which requires explicit *Miranda*-type warnings only in situations of either testimonial or communicative evidence. State v. Mordecai, 83 N.M. 208, 490 P.2d 466 (Ct.App.1971). No warning provision is needed in statutes of a state where the courts interpret the self-incrimination privilege as giving no protection against compulsory physical evidence. Schmerber v. California, supra. Since New Mexico has consistently excluded physical evidence from the scope of the protection, it follows that an accused has no constitutional right to the warnings sought.

We note that defendant only impliedly argues the Fifth Amendment privilege against self-incrimination. To that end, we hold that there is no statutory provision under which defendant could exclude the evidence obtained in the contested blood test. We further hold that there is no constitutional reason, either state or federal, which confers upon the accused a right to be expressly told that he has an opportunity, under § 64–22–2.9, supra, to have additional tests performed by any qualified person of his choosing.

Nevertheless, as the court said in Schmerber v. California, supra:

"* * * we reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold the Constitution does not forbid the States minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions."

See also Justice Douglas' dissent in Schmerber, 384 U.S. at 778, 86 S.Ct. 1826, 16 L.Ed.2d 908, supra.

(3) *Instructions*

Defendant contends that he should have been allowed (a) two instructions on the relevance of character evidence, and (b) one instruction allowing the jury to consider contributory negligence as a factor in determining proximate cause.

(a) The defendant cites State v. Mc-Knight, 21 N.M. 14, 153 P. 76 (1915), and State v. Burkett, 30 N.M. 382, 234 P. 681 (1925), for the proposition that he was entitled to instructions on the relevance of character evidence if there were evidence in the record to support it. Defendant's former wife testified that he did not drink often during their marriage, and that when he did, he did not drink to excess.

While we agree with the general proposition presented, State v. McKnight, supra, concerns the admissibility evidence, a point not here in dispute. In State v. Burkett, supra, the court ruled against another defendant on nearly identical instructions. We believe the defendant has misconstrued the holding in State v. Burkett, supra, and we hold, as did that court, that to give defendant's requested instructions would only have caused the court to comment upon the weight of the evidence. It is also noted that the court in the case at bar did admit the proffered evidence and did instruct the jury on the weight to be given all evidence, in general.

(b) Because Mr. Hosier testified that Cheryl Lynn was not wearing a

seat belt at the time of the accident, defendant requested an instruction that contributory negligence of another can be considered in determining the proximate cause of death. Rules concerning contributory negligence have no application to homicide cases. State v. Romero, 69 N.M. 187, 365 P.2d 58 (1961).

Furthermore, the jury was adequately instructed regarding the necessity of finding proximate cause. As in part (a) of this Point (3), we hold that the court instructed " . . . the jury upon all questions of law necessary for guidance in returning a verdict." See § 41–23–41(a), N.M.S.A. 1953 (2d Repl.Vol. 6, Supp.1973). [As to proximate cause, see supra section (1)(b) of this opinion.]

### (4) *Confrontation of a witness*

Defendant next contends that he was denied due process in that he was not able to adequately question the accuracy of the machine which tested his blood. The accuracy of the machine was supported on direct examination by a witness with a degree in business administration who conducted the test with the machine. The witness did not understand the full intricacies of the machine or the source of its claimed accuracy. The testimony was admitted only after objection by the defense as to the qualifications of the witness to testify.

■ It cannot be disputed that the defendant has the right to cross-examine and confront the witnesses against him. N.M. Const. Art. II, § 14; State v. Martin, 53 N.M. 413, 209 P.2d 525 (1949). A lay witness, not an expert, may testify generally as to what he observes. This capacity extends into those fields generally acknowledged as beyond the knowledge of the jury, where so-called "expertise" is required, if the witness is sufficiently trained and experienced. State v. Chavez, 77 N.M. 274, 421 P.2d 796 (1966); Pavlos v. Albuquerque National Bank, 82 N.M. 759, 487 P.2d 187 (Ct.App.1971).

■ The witness in this case was neither a chemist nor a medical expert. However, he had been trained to operate the test machine and had performed several hundred similar tests with it. "That he was not a specialist does not go to the admissibility of the evidence elicited from him nor to its sufficiency to support a finding based thereon, but rather to the weight to be accorded it." Frederick v. Younger Van Lines, 74 N.M. 320, 329, 393 P.2d 438, 444 (1964). Further, defendant had ample opportunity to cross-examine the witness.

■ We hold that the defendant was afforded due process in that the accuracy of the testing machine was supported by lay testimony, subject to full rights of cross-examination by defendant.

### (5) *Foundation for results of breathalizer test*

■ Defendant finally contends that it was error on the part of the trial court to allow Officer Cottle to testify concerning the results of a breathalizer test. It is clear from the record that the officer was not testifying as an expert. Determination of the admissibility of such testimony is within the sound discretion of the court. Garrett v. Howden, 73 N.M. 307, 387 P.2d 874 (1963). We find no abuse of discretion on the part of the trial judge.

We conclude that the trial court committed no error in any of the points urged by the defendant, and the judgment and sentence of that court are hereby affirmed.

It is so ordered.

HERNANDEZ, J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

I dissent.

A. *The indictment was fatally defective.*

The indictment charged defendant with homicide by vehicle in one count. It charged defendant with driving under the

influence of intoxicating liquor *or* drugs, *or* reckless driving, which resulted in the death of a minor child.

The jury returned a verdict:

We, the jury, find the defendant guilty in the manner and form as charged in the indictment.

The indictment and verdict leave unanswered the following question: Was the defendant convicted of homicide by vehicle while (1) driving under the influence of intoxicating liquor, or (2) driving under the influence of drugs, or (3) driving recklessly? The State must inform a defendant, with certainty, of the offense with which he was charged. It is impossible to sustain a conviction upon an indictment in which the offense charged is indefinite and uncertain. State v. McMath, 34 N.M. 419, 283 P. 51 (1929).

It is the established rule of the common law * * * that in all criminal prosecutions the accused must be informed of the nature and cause of the accusation against him. It is the law of every civilized community, and *in no case can there be, in criminal proceedings, due process of law where the accused is not thus informed.* The information which he is to receive is that which will acquaint him with the essential particulars of the offense, so that he may appear in court prepared to meet every feature of the accusation against him. State v. Dutchover, 85 N.M. 72, 77, 509 P.2d 264, 269 (Ct.App.1973) (Sutin, J., dissenting) (quoting Mr. Justice Field's dissent in O'Neil v. Vermont, 144 U.S. 323, 365–66, 12 S.Ct. 693, 709, 36 L.Ed. 450, 468 (1892))

The use of the disjunctive "or" is a fundamental defect and the indictment is fatally defective and void and vulnerable to attack at any time. People v. Heard, 47 Ill.2d 501, 266 N.E.2d 340 (1970); State v. Hook, 433 S.W.2d 41 (Mo.App.1968); State v. Ciocca, 125 Vt. 64, 209 A.2d 507 (1965); State v. Webster, 105 N.H. 415, 200 A.2d 856 (1964). See, also, 42 C.J.S.

Indictment and Information, § 101, at 984–86.

    B. *The State denied defendant his statutory right to a blood test by a physician of his own choosing. This was prejudicial error.*

The accident occurred at 11:10 p. m. A blood sample was drawn from defendant at about 12:15 a. m. Two breath balloon tests were made. A blood alcohol test on the blood sample was made by the State.

On January 25, 1974, two months before trial, defendant filed a motion for an additional blood test. On the morning of trial, this motion was heard. The court and the State agreed that defendant was entitled to a blood alcohol test of the blood sample pursuant to § 64–22–2.9(B), N.M.S.A.1953 (2nd Repl.Vol. 9, pt. 2). However, the State reported that it exhausted all of the blood sample in making its tests to determine alcoholic content and drugs, if any, in defendant's body. None of the blood sample withdrawn from defendant was available for an additional blood test by a physician chosen by the defendant. The trial court denied defendant's motion to suppress the blood tests taken by the State.

The majority of this Court finds no error in denial of defendant's motion to suppress the results of the State's blood test, even though defendant was unable to introduce his own evidence as to alcohol blood levels at trial. The majority's reason for so holding is that the statute permitting defendant to perform his own blood test "cannot insulate defendant 'against the slings and arrows of outrageous fortune' * * *."

To the contrary, the accused has an absolute right to secure witnesses and *obtain additional evidence* to counteract the evidence obtained by the government, to establish a defense and to seek an acquittal. To hold otherwise is to return to the rack and the stake.

The defendant, not the State, was penalized at trial because the blood sample was used up before defendant could exercise

his right to perform his own blood test. This consequence does not disturb the majority of the Court. It disturbs me greatly because, "Essential fairness is a fundamental due process requirement in criminal prosecutions * * *. [Citations omitted]." United States v. Parish, 152 U.S. App.D.C. 72, 76, 468 F.2d 1129, 1133 (1972), cert. denied, 410 U.S. 957, 93 S.Ct. 1430, 35 L.Ed.2d 690 (1973).

> A fair trial is * * * one where the accused's legal rights are safeguarded and respected. Johnson v. City of Wildwood, 116 N.J.L. 462, 184 A. 616, 617 (Ct.Err. & App.1936).

This is not a case simply of "justice" or "fairness", in the abstract. Denial to defendant of the opportunity to conduct his own blood test was a denial of access to evidence he might have introduced in his own defense. For this reason, it is a denial of his constitutionally guaranteed due process of law. Commonwealth, Dep't of Transp. v. Gallagher, 3 Pa.Cmwlth. 371, 283 A.2d 508 (1971); People v. Burton, 13 Mich.App. 203, 163 N.W.2d 823 (Ct.App. 1968); People v. Koval, 371 Mich. 453, 124 N.W.2d 274 (1963); Application of Newbern, 175 Cal.App.2d 862, 1 Cal.Rptr. 80 (Ct.App. 2nd Dist. 1959).

Full and free access to evidence is fundamental in our adversary system of trial.

> A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice, *even though * * * his action is not "the result of guile,"* * * *. [Emphasis added] Brady v. Maryland, 373 U.S. 83, 87–88, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215, 219 (1963).

> [T]he ends of justice will best be served by a system of liberal discovery which gives both parties the maximum possible amount of information with which to prepare their cases * * *. Wardius v. Oregon, 412 U.S. 470, 473, 93 S.Ct. 2208, 2211, 37 L.Ed.2d 82, 87 (1973).

Imposing a heavier burden on the defendant than on the State contradicts two of the most fundamental principles in our criminal law: (1) An accused is presumed innocent until proven guilty. (2) The State must prove the guilt of an accused beyond a reasonable doubt (the heaviest burden of proof imposed on any litigant in our legal system). On the importance of these principles in our criminal justice system, see State v. Chambers, 86 N.M. 383, 524 P.2d 999 (Ct.App.1974); State v. Henderson, 81 N.M. 270, 466 P.2d 116 (Ct. App.1970); United States v. Bonanno, 180 F.Supp. 71 (S.D.N.Y.1960); R. Anderson, Wharton's Criminal Law and Procedure, v. 5 §§ 2098, 2100, at 267, 271; J. Bentham, A Treatise on Judicial Evidence (1825), at 196–98.

Because the defendant was denied his statutory right to his own blood test and, therefore, his constitutional right to gather evidence in his own defense, introduction of the State's blood test results was a denial of due process to the defendant. The State's blood test results should have been suppressed at trial.

C. *The State had a duty to warn defendant of his statutory right.*

The majority of this Court believes that no warning of defendant's statutory right to have his own blood test performed is required. The reason given by the majority is that blood tests are not covered by the Fifth Amendment privilege against self-incrimination, Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and, therefore, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), does not apply to the instant case.

It is uncontested that appellant had a statutory right to have his own test performed. It is a fair assumption that the great majority of citizens are unaware of this right. *If a citizen is unaware of his*

*right to request an additional blood test, how can he exercise the right?*

The problem here revolves around *notice* of a statutory right that might be useful in preparing one's defense to a criminal charge.

> Notice is sometimes essential so that the citizen has the chance to defend charges. Notice is required before property interests are disturbed, before assessments are made, before penalties are assessed. Notice is required in a myriad of situations where a penalty or forfeiture might be suffered for mere failure to act. [Citations omitted]. Lambert v. People of the State of California, 355 U.S. 225, 228, 78 S.Ct. 240, 243, 2 L.Ed.2d 228, 231 (1957).

The Fifth Amendment privilege against self-incrimination is irrelevant to blood alcohol test results. *Schmerber,* supra. Even so, the reasoning which led the Supreme Court in *Miranda to choose a warning* as the best method of protecting that privilege applies with equal validity to the statutory right here in question.

> * * * [W]e will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given. Assessments of the knowledge the defendant possessed, based on information as to his age, education, intelligence, or prior contact with authorities, can never be more than speculation; *a warning is a clearcut fact.* [Emphasis added]. 384 U.S. at 468–69; 86 S.Ct. at 1625, 16 L.Ed.2d at 720.

I conclude that persons compelled to give blood samples pursuant to the Implied Consent Act are deprived of their statutory right to an additional blood test, if they are not advised of that right at the time the blood sample is given to the State.

It is only a short step further to the conclusion that the lack of warning as to his statutory right deprived appellant of his right to due process of law, guaranteed by the state and federal constitutions. The reason is that the results of his own addi-

tional blood test might have been used by appellant in his own defense, at trial. Therefore, failure to warn of the right to obtain his own blood test denied .appellant his due process right to obtain evidence for use in his own defense in a criminal prosecution. *Gallagher,* supra; *Burton,* supra; *Koval,* supra; *Newbern,* supra.

I conclude that the majority of the Court is correct that appellant was not robbed of his Fifth Amendment privilege against self-incrimination because of the failure to warn of his statutory right to an additional blood test. However, that is not the point. The failure to warn *did* deprive appellant of the opportunity to exercise his statutory right. And deprivation of the statutory right in question has the consequence of depriving accused persons in a criminal proceeding of their due process right to obtain evidence in their own defense.

> D. *Accused persons, from whom alcohol blood samples are taken, pursuant to the Implied Consent Act, have a right to the presence of counsel when the blood sample is taken.*

The Sixth Amendment guarantee of the assistance of counsel requires that counsel be present at all "critical stages" of a criminal proceeding. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967). Presence of counsel is not constitutionally required at the time of the taking of a blood sample, because this is not a constitutionally protected "critical stage" of a criminal proceeding. *Wade,* supra; *Schmerber,* supra. In New Mexico, however, the time of the taking of the blood sample *must be considered a critical stage,* because a constitutionally protected warning of the right to an additional blood test is required at that time. Therefore, an attorney's presence should be mandatory, in New Mexico.

Even though the right to an additional blood test arises from legislative fiat, *the right to be advised of the statutory right* is protected by the due process clause in the state and federal constitutions. The *Wade*

requirement that counsel be present at "critical stages" makes presence of counsel mandatory at the time when this constitutionally protected warning must be given, i. e., when the blood sample is drawn.

The *Schmerber* holding that the Fifth Amendment privilege against self-incrimination does not cover the giving of a blood sample for a blood alcohol test was concurred in by only five of the nine justices on the Supreme Court. Chief Justice Warren, and Justices Black, Douglas and Fortas wrote, in dissent, that the Fifth Amendment protection *does* apply. The close division of the Supreme Court on that question, coupled with the necessity, in New Mexico, of giving a constitutionally protected warning at that stage of the proceedings, should compel the conclusion that this is a "critical stage" in New Mexico; and that, therefore, presence of counsel is required to protect an accused's constitutional rights.

E. *Defendant is entitled to a fair trial.*

A criminal trial is an adversary procedure in which the State, seeking the conviction of an accused, and the accused, fighting for his liberty, engage in combat. Each side should fight with zeal, yet not without respect for the rules that maintain the fairness of the adversary process. The accused must be given the benefit of all procedural safeguards provided by the Constitution, by statutes, and by case law. This is the essence of a fair trial, one in which evenhanded justice is dispensed.

A sporting contest is analogous to a lawsuit, in that it is an acceptable form of combat in our society, acceptable because the "rules of the game" maintain fairness between the adversaries. In boxing, the rules do not require that one adversary shall fight with one arm strapped to his back. In tennis, the rules do not require a right handed adversary to use the racquet with his left hand.

Similarly, in a criminal trial, the rules do not require an accused to fight for life or liberty without access to evidence to which he is entitled, or without a competent attorney to protect and defend him. The rules do not allow the State to give evidence against an accused, while denying the accused access to the same type of evidence for use in his defense. Yet that is precisely what was done in the instant case, with respect to blood alcohol test results.

Police officers are, or should be, familiar with criminal laws like the Implied Consent Act, having been trained at the New Mexico Law Enforcement Academy. They are aware of their authority to arrest and to direct the performance of a blood alcohol test. Those duties were adequately performed in this case. They should also be aware that the person arrested, from whom blood has been withdrawn, must be given an opportunity to arrange for a physician or other qualified person of his own choosing to perform a chemical test in addition to any test performed at their direction. In the instant case, a police officer's lack of knowledge of the law allowed the State to deprive defendant of his statutory rights.

It is reprehensible that the State should first force the defendant to give blood without his consent, then exhaust the sample, and, finally, use the tests, over objection, with pomp and glory and splendor in the courtroom to convict him. The State has no legal right to say: "It is too bad. We are very sorry that all the blood was exhausted. We have got you now." Such a course of action has no place in our adversary system of litigation.

The State has no right to, "deprive any person of life, liberty, or property, without due process of law; * * *." Amendment XIV, Constitution of the United States; Article II, Section 18, New Mexico Constitution. Yet, in this case, there was no due process of law in respect to the accused's right to gather evidence for use in his own defense.

Defendant did not have a fair trial.